ALDON INDUSTRIES, INC., Plaintiff-Appellant Cross Appellee,

v.

DON MYERS & ASSOCIATES, INC., and Donald F. Myers and Ruth E. Myers, Individually, Defendants-Appellees Cross Appellants.

No. 74–2215.

United States Court of Appeals, Fifth Circuit.

Aug. 7, 1975.

Rehearing Denied Sept. 26, 1975.

Kenneth L. Ryskamp, John L. Britton, Miami, Fla., Edward B. Bergman, John R. Padova, Richard D. Solo, Philadelphia, Pa., for plaintiff-appellant cross appellee.

Marc M. Watson, Guy B. Bailey, Jr., Miami, Fla., for defendants-appellees cross appellants.

Before BELL, DYER and SIMPSON, Circuit Judges.

DYER, Circuit Judge:

Aldon Industries, Inc., a manufacturer of carpeting, brought suit against Don Myers & Associates, Inc., an Aldon dealer, for the price of carpeting which it sold to Myers. Myers counterclaimed for lost prospective profits because of defective carpeting claiming breach of express and implied warranties, and negligence in the manufacture and inspection of carpeting. Judgments were rendered upon jury verdicts for Aldon in the amount of $50,913.45, and for Myers in the amount of $170,000, on their respective claims. Both parties appeal. We affirm the judgment on the principal claim and reverse the judgment on the counterclaim. We remand for a determination of Donald and Ruth Myers' individual liability as guarantors of the corporation's debt.

## ALDON'S CLAIM

Myers argues that a computer printout of Aldon's accounts receivable, absent actual invoices or bills of lading, is insufficient to prove that carpet was actually delivered to Myers. Under the Uniform Commercial Code a seller is entitled to recover the price of accepted goods. F.S.A. § 672.2–709(1)(a). Aldon's manager of accounts receivable, credits,

and collections traced the company's procedure from receipt of an order to delivery. The accounts receivable information is not entered into the computer until delivery is made. This uncontradicted evidence supports an inference that goods, reflected as accounts receivable on the computer printout, were actually delivered. *See* Olympia Insurance Co. v. H. D. Harrison, Inc., 5 Cir. 1969, 418 F.2d 669. We thus agree with Aldon that its recovery was proper. We must pause to note here, however, that the district court failed to pass on Aldon's claim against Donald and Ruth Myers, individually, as guarantors of the corporation's debts. We therefore remand this issue to the district court for further appropriate proceedings.

## MYERS' COUNTERCLAIM

The primary dispute between the parties is the propriety of Myers' recovery against Aldon of $170,000 ($200,000 less 15% for contributory negligence) based upon Aldon's alleged breach of express and implied warranties, and negligence in the manufacture and inspection of defective carpet. Aldon, a Pennsylvania corporation, argues that Pennsylvania law should apply. The district court applied Florida law to resolve the dispute.

Under the Uniform Commercial Code, which has been adopted in both Florida and Pennsylvania, damages for breach of warranty comprise general damages (measured by the difference between the value of the goods accepted and the value they would have had as warranted), and, in a "proper case," incidental and consequential damages. F.S.A. §§ 672.-2–714(2)–(3), 672.2–715. Myers did not seek general damages, but sued for consequential damages for lost prospective profits resulting from injury to its business of equipment sales to Florida schools by reason of the identification of Myers with the defective carpet.

There is substantial evidence that express and implied warranties of merchantability and fitness for a particular purpose were breached, and Aldon does not attack these findings. The issue on appeal, therefore, is whether this is a "proper case" for awarding consequential damages. Because the Code does not define what is a "proper case," we must look to state common law to resolve the issue. *See* F.S.A. §§ 672.2–103 and 672.2–715, Comment 2; *see also* Peters, *Remedies for Breach of Contracts Relating to the Sale of Goods Under the Uniform Commercial Code: A Roadmap for Article Two,* 73 Yale L.J. 199, 272 (1963).

Since Pennsylvania and Florida common law diverge, we must determine whether the district court correctly applied Florida law. Pennsylvania denies recovery for lost prospective profits as being inherently speculative. Neville Chemical Co. v. Union Carbide Corp., 3 Cir. 1970, 422 F.2d 1205. This accounts for Aldon's strenuous argument that Pennsylvania law should apply. We agree with the district court that Florida law should govern, but we need not belabor the point since the resolution of the issue under Florida law is equally favorable to Aldon.

A federal court in a diversity case must apply the conflict of laws rules of the forum state, in this case Florida. Klaxon Co. v. Stentor Manufacturing Co., 1941, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477. Florida's Uniform Commercial Code conflict of law provision, which governs the breach of warranty claims, requires that in the absence of agreement, Florida law is to apply if the transaction has an "appropriate relation to this state." F.S.A. § 671.1–105(1). In light of Whitaker v. Harvell-Kilgore Corp., 5 Cir. 1969, 418 F.2d 1010, 1015–17, and the similarity of facts in the two cases, particularly since Aldon and Myers both knew that the carpet was to be installed in Florida and since the alleged injury occurred solely in Florida, the transaction is appropriately related to Florida. For the same reasons, Florida law should apply to the tort claim when analyzed under either the "place of injury" or the "center of gravity" choice of laws approach.

■ Aldon urges that even under Florida law Myers' recovery for breach of warranty cannot stand because it is based upon speculative damages. Whether damages are speculative must be determined by inquiry into both causation of the damage and measurement of damages. The term "speculative" is basically a characterization of the evidence introduced to prove the damages. 5 A. Corbin, *Corbin on Contracts* § 1022 (1964). Proof must show with reasonable certainty that the plaintiff suffered damages and that the damages flowed as the natural and proximate result of defendant's wrongful conduct. Twyman v. Roell, 1936, 123 Fla. 2, 166 So. 215. Once the causal connection has been demonstrated, although the impossibility of calculation with "absolute exactness" will not defeat recovery, McCall v. Sherbill, Fla.1953, 68 So.2d 362, 364, the amount of damages must be capable of proof to a reasonable certainty and not left to speculation or conjecture. Travelers Indemnity Co. v. Peacock Construction Co., 5 Cir. 1970, 423 F.2d 1153, 1157; New Amsterdam Casualty Co. v. Utility Battery Manufacturing Co., 1935, 122 Fla. 718, 166 So. 856, 860; Kenco Chemical & Manufacturing Co., Inc. v. Railey, Fla.App.1973, 286 So.2d 272, 274. Myers' proof fails on both counts.

Loss of prospective profits sought by Myers is

. . . distinguishable from loss of profits caused by inability of a plaintiff to use specific property destroyed, damaged or withheld by a defendant's wrong, and profits lost on the particular sale or contract for the performance of which the goods in question were purchased.

Neville Chemical Co. v. Union Carbide Corp., 3 Cir. 1970, 422 F.2d 1205, 1226. *See also, Twyman, supra* at 217; 28 A.L. R.2d 591 (1953). The Florida rule governing speculative damages has been translated in loss of prospective profits cases to a "general rule . . . that the anticipated profits of a commercial business are too remote, speculative, and dependent upon changing circumstances to

warrant a judgment for their loss." *New Amsterdam, supra,* 166 So. at 860. Although *New Amsterdam* did not establish an absolute prohibition to recovery, the rule does reflect an awareness that proof of anticipated profits contains an inherent element of conjecture and therefore that a plaintiff has a more difficult time in bearing his burden of proving the fact and amount of damages to a reasonable certainty.

### Fact of Damage

Myers alleged that its ability to sell carpets had been severely impaired throughout the state of Florida. Myers attempted first to prove damage to its reputation in the eyes of school boards throughout the state by showing that the boards blamed Myers for poor installation of what in fact was defective carpet. Defective carpet was delivered by Aldon and installed by Myers at a number of schools. The litigation focused upon installation of the carpet in two schools, the Kirklane Elementary School in Palm Beach County and the East Naples Middle School in Collier County. The school boards' dissatisfaction with the carpet stemmed from the uneven foam backing in the carpet causing lumping and poor seaming, the non-adherence of the backing to the carpet itself, and the installation of rolls of carpet drawn from different dye lots resulting in adjacent strips of carpeting with non-matching colors. Other problems included the streaking of colors in carpet of the same rolls and dye lots, broken tufts, and staining due to excessive water retention. Both county school boards subsequently removed Myers from their bidding lists.

■ Since Myers sought recovery for damages resulting from statewide loss of sales, it follows that it must prove statewide rather than localized injury. Statewide injury to its reputation and consequent loss of sales cannot be inferred from Myers' removal from the bidding lists of two out of a total of sixty-seven county school boards.

■ More importantly the proof is inadequate to show that Myers' removal

from the bidding lists was caused by the defective carpeting rather than by the corporation's own actions. The School Planning Architect of Palm Beach County wrote the Director of Purchasing listing three reasons for the recommended removal: irregular bidding practices, problems in the installation of wall partitions (not carpeting) in another county school, and knowing installation of defective carpet. It was not the defective carpet *per se*, but the fact that Myers knew of the defects, yet authorized the installation without bringing the defects to the attention of school officials, that caused the removal. Myers admitted knowingly installing the defective carpet. This action interrupted the chain of causation and was an independent intervening cause for Myers' removal from the bidding list. *See* F.S.A. § 672.2–715, Comment 5. Myers was removed from the pre-bid list in Collier County not because of the defective carpet, but from failure to obtain bonding.

■ Unsubstantiated allegations of statewide *sub rosa* blacklisting cannot fill the void. Florida law requires county school boards to advertise bids, and to award contracts for building and improvements to the lowest responsible bidder, but gives the boards discretion to reject any and all bids received. F.S.A. § 235.31. Other than in the two indicated instances Myers failed to show any occasion either of being prohibited from bidding or of submitting the low bid and having that bid rejected.

Myers asserts, however, that it would have been useless for him to bid because he could not obtain bonding. Florida law requires a contractor to furnish the county school board with a surety bond upon award of a contract. F.S.A. § 235.-32. He argues that the inability to obtain bonding resulted from claims by the school boards on its Kirklane and East Naples bonds which in turn resulted from Aldon's wrong. Consequently, urges Myers, if it could not obtain bonding, it could not bid on jobs throughout the state. In effect, then, Myers was

injured as a proximate result of Aldon's and not its own wrongdoing.

The evidence of inability to obtain bonding was thin. Myers had applied and was refused bonding from its usual bonding company on two occasions, once in 1971, and once in 1972. It did not seek a new bonding company. Assuming, however, that it could not have obtained bonding in Florida, there is no evidence to connect the bonding refusals with the defective carpeting. Myers relied on an inference that the bonding refusals were caused by the claims on its bonds. Such an inference is not permissible, however, in light of substantial contradictory evidence. Fidelity & Deposit Company of Maryland, which refused Myers' two bonding applications, attributed the refusals to factors developing over a number of years unrelated to the claims. The two primary bases for refusal were the submission of inadequate financial statements, and unsatisfactory credit reports. The two claims on Myers' bonds were not substantial factors in the decision not to issue the new bonds. Furthermore, the Collier and Palm Beach County school boards both released their claims against the bonds after reaching a settlement with Aldon and Myers. Finally, there was no evidence showing what percentage of business Myers conducted as a prime contractor, requiring bonding, or as a subcontractor, except that it was unusual for a carpet and equipment company to deal directly with school boards. Myers further testified that certain of its manufacturers provided the bonding it needed. It is thus conjectural how the bonding refusals could lead to substantial damage.

■ To demonstrate statewide damage, Myers relied heavily on evidence that Aldon carpet was blacklisted by school boards in Broward and Pinellas counties, and that it was removed from the specifications of the centralized school bidding system which state schools could utilize to obtain better prices due to the volume bids. Indeed,

Myers may have failed to gain business it would have obtained if Aldon carpet had continued to be specified and non-defective. However, this type of damage is not recoverable. A dealer cannot recover for loss of prospective profits simply as a result of customer dissatisfaction with the manufacturer's product. Rather the dealer, to recover, must have become so identified with the defective product that in the eyes of third parties it and not the manufacturer is held responsible for the defects, and its business is thereby damaged.

### Amount of Damage

██ Assuming Myers could have proved some statewide damage, it failed to prove to a reasonable certainty the amount of damages. Myers' expert calculated the amount of damages by determining Myers' share of the Florida "school equipment" market for two years prior to the deliveries of defective carpet and determined that if Myers had retained the same share of the market for the four successive years, it would have realized approximately $2 million in additional gross sales. He applied Myers' ratio of 10% gross profits to gross sales to arrive at damages of $200,000. No calculation of estimated expenses to reduce the gross profits to net profits was provided.

The problem is that one cannot determine to a reasonable certainty what part, if any, of this lost market share resulted from Aldon's wrongdoing. The variables which could explain or account for a significant portion of the market share loss are sufficiently numerous to place the damage award in the realm of speculation and conjecture.

We have already discussed the first and perhaps most significant variable. Myers dealt exclusively in Aldon carpet. A significant increase in profits paralleled its acquisition of an Aldon dealership. These profits would naturally be lost if Florida schools declined to specify Aldon carpet. But, a dealer cannot hold a manufacturer liable for mere customer dissatisfaction with the manufacturer's product. Second, increasingly intense competition (Myers testified that it had "become fierce") emerged as the market expanded. Third, the nature of Myers' business changed from that of a manufacturer's representative earning commission sales to that of a dealer buying wholesale from manufacturers, necessitating a significant input of capital and a satisfactory credit position. Fourth, the sales pattern prior to the defective deliveries was erratic, reflecting significant ups and downs from year to year. Predicting the volume of future sales based upon this unstable history is but surmise. Fifth, Myers did not expand its sales force or promotional activities to meet the expanding market. Also, there is no evidence of market expansion in the types of school equipment that Myers sold. Sixth, Myers' expert based his opinion on numerous assumptions, some of which were supported by either no evidence or by the flimsiest of evidence. Seventh, the acts which Myers believed sufficient to show the fact of damage (the bonding refusals and blacklisting) did not occur until the last two years of the alleged damage period. Other factors were noted, but are merely cumulative and therefore we do not list them. We do not say that any one variable necessarily reduces the damage award to conjecture, but viewed as a whole there is little doubt that the award was based on mere speculation. See Kenco, supra, which reached the same conclusion on similar evidence.

We conclude, therefore, that because the damages in this case are too speculative and subject to conjecture, Myers' recovery for breach of warranty is not proper. Further, because the same considerations apply in tort damage claims as in warranty, recovery for Aldon's negligence is likewise improper. See, e. g., Bartholf v. Baker, Fla.1954, 71 So.2d 480, 485; Payne v. Ivey, 1922, 83 Fla. 436, 93 So. 143, 146. We therefore need not pass on Aldon's assertion that negligence is not an appropriate ground for relief in this case.

*Fraud and Punitive Damages*

 Finally, we note Myers' argument that the district court erred in not permitting the issues of fraud and punitive damages to go to the jury. We have examined the record and agree with the district court that no evidence was presented to permit a recovery on these issues.

Affirmed as to Aldon's recovery, reversed as to Myers' recovery, and remanded on the issue of Donald and Ruth Myers' individual liability.

Affirmed in part; reversed in part and remanded.