COMPANIA PELINEON DE NAVEGA-
CION, S. A., Plaintiff-Appellant,

v.

TEXAS PETROLEUM COMPANY,
Defendant-Appellee.

No. 806, Docket 75-7627.

United States Court of Appeals,
Second Circuit.

Argued April 19, 1976.

Decided Aug. 6, 1976.

Joseph C. Smith, New York City (Burlingham, Underwood & Lord, Robert J. Zapf, New York City, of counsel), for plaintiff-appellant.

Louis P. Sheinbaum, New York City (Bigham, Englar, Jones & Houston, Geoffrey W.

Gill, New York City, of counsel), for defendant-appellee.

Before HAYS and MANSFIELD, Circuit Judges, and BRIEANT, District Judge.*

BRIEANT, District Judge:

Plaintiff-appellant, Compania Pelineon De Navegacion, S.A. ("Pelineon"), as owner of the chartered petroleum tanker S.S. CAPETAN MATHIOS ("the Mathios"), seeks to review a final judgment entered in the Southern District of New York upon oral decision and written findings following a bench trial. The trial court awarded plaintiff damages in the total amount of $75,258.05, including interest, arising out of loss of use of the vessel, and directed that each party bear its own costs.

On September 29, 1972 at Tumaco, Colombia, while under a long-term time charter to Gulf Oil Corporation ("Gulf") the Mathios was being maneuvered into a sea berth by a pilot employed by defendant-appellee Texas Petroleum Company. In part due to the negligence of Texaco employees, not disputed here, her propeller became fouled in the chain of a buoy marking the berth. As a result of this allision, the vessel suffered severe physical damage, also not in issue on this appeal.

In the days immediately following the allision, the vessel was examined at Tumaco by an American Bureau of Shipping ("ABS") surveyor who observed that, among other damage, the fair water cone was missing but nevertheless issued a certificate of seaworthiness on October 3, 1972. The Mathios resumed trading under the Gulf charter. A new fair water cone was ordered with drydocking to be scheduled as soon as the needed repair part became available.

Soon after leaving Tumaco, the vessel experienced some vibration and operating difficulties. The owner and charterer agreed that a mutually convenient time to accomplish this yard repair would be in late March and early April, 1973. When the fair water cone became available, the Mathios entered drydock at Hoboken, New Jersey, on March 29, 1973, some four months prior to her next scheduled drydocking and overhaul, which had been originally planned following charter expiry.

In drydock, it was discovered for the first time that the vessel had been rendered unseaworthy by the occurrence at Tumaco. The needed repairs being accomplished, together with certain unrelated owner's repairs, the Mathios returned to the charterer's service on April 19, 1973.

On June 28, 1973, Gulf exercised its option under the charterparty to extend the charter by a period equal to all the off-hire time experienced by the Mathios during the charter. The off-hire extension included 25.179 days due to the aforementioned drydocking at Hoboken.

Between April and October, 1973, the market rates for voyage charters, and to a lesser extent for time charters, soared. On October 6, 1973, an Arab-Israeli war broke out. For a brief time thereafter, market rates remained high, but with the advent of oil embargoes by Mid-East oil producers, the demand for tankers fell sharply, along with the market rate for charter hire of tankers. The lower market rates began in the third week of October and remained depressed for some time thereafter.

The parties stipulated in the pre-trial order that the vessel

"would have completed its charterparty commitment and all extensions, except that related to the Tumaco casualty, by on or about October 30, 1973. The vessel came off charter after all extensions on November 24, 1973."

Assigned as error on this appeal are (A) denial of recovery for loss of profit in excess of the rate under the existing time charter for that period by which the charter term was extended as a result of the allision; (B) denial of recovery for four (4) days loss of profit out of the repair period, found by the trial court to be attributable to unrelated owner's work; and (C) denial

---

* Of the Southern District of New York, sitting by designation.

of an award of costs to the prevailing party. We discuss these claims in the order listed.

(A) The trial court held Pelineon's damages for loss of the use of the vessel as a result of the Tumaco incident should be measured by the net profits lost under the charterparty in effect at that time, holding:

> "[P]laintiff in effect seeks to have defendant pay twice for a single wrong. The off-hire provision in the charterparty is a contractual provision between plaintiff and the charterer. Plaintiff well knew that any off-hire time could be added to the charter term, and that plaintiff would be paid at the agreed rate for any off-hire period added. Plaintiff's attempt to recover hypothetical profits from defendant over and above those amounts actually contracted and paid under the charterparty has never before been awarded in similar circumstances, and this Court finds and holds it to be inequitable under well accepted equitable principles in Admiralty."

Relying on *Skou v. United States*, 478 F.2d 343 (5th Cir. 1973) the court below held that the applicable measure of damages in determining lost profits is the charter rate less costs and expenses saved by the owner when the vessel was not in active service under the charter. The court found that Pelineon earned $2,179.36 net profit per day under the charterparty, which had been entered into in September 1969, and extended by an addendum dated May 28, 1971, at a rate of $3.85 per deadweight ton per month.

The court found plaintiff's calculation of lost profits to be highly speculative and "based on questionable assumptions of unforeseeable facts."

In this we find error. Demurrage, loss of profits from loss of the use of a vessel, traditionally has been an item of damage in maritime tort law. However, "demurrage will only be allowed when profits have actually been, or may be reasonably supposed to have been, lost, and the amount of such profits is proven with reasonable certainty." *The Conqueror*, 166 U.S. 110, 125, 17 S.Ct. 510, 516, 41 L.Ed. 937 (1897).

In *Petition of Kinsman Transit Company*, 338 F.2d 708, 724 (2d Cir. 1964), *cert. denied sub. nom. Continental Grain Co. v. City of Buffalo*, 388 U.S. 944, 85 S.Ct. 1026, 13 L.Ed.2d 963 (1965), this Court observed that

> "[t]he weight of authority in this country rejects the limitation of damages to consequences foreseeable at the time of the negligent conduct when the consequences are 'direct,' and the damage, although other and greater than expectable, is of the same general sort that was risked."

Pelineon's damage here was plainly damage of the "same general sort that was risked."

Under the circumstances presented here, the magnitude of this damage, in addition to the fact of damage itself, was foreseeable. It was foreseeable that damage to the vessel would result in loss of use, and hence lost profits. It was also foreseeable that the vessel would be operating under time charter nearly complete as to term, with provision for off-hire extension. Ironically, the very charterparty agreement between Pelineon and Gulf was a form contract, amended as to matters not relevant here, used by appellee's parent company, Texaco. It was also foreseeable that the off-hire extension provision would be invoked by the charterer only if it were commercially advantageous to do so. The off-hire extension provision would be advantageous to the charterer if, at the time the charterparty would otherwise have expired, the market price for tankers had risen.

It is clear that if defendant had not negligently caused the accident, necessitating drydock repair and the attendant delay and off-hire extension, Pelineon would have been able to earn additional profits during the time when the Gulf charter had to be extended at the old rate. We, therefore, reject the argument that these profits were too remote a consequence or too unforeseeable to be recoverable.

The uncertainty regarding the damages in this case is only as to their amount.

"The rule which precludes the recovery of uncertain damages applies to such as are not the certain result of the wrong, not to those damages which are definitely attributable to the wrong and only uncertain in respect of their amount." *Story Parchment Co. v. Paterson Co.*, 282 U.S. 555, 562, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931). It is not required that damages be proved with mathematical exactness provided that there is reasonable data from which the amount of damages can be ascertained with reasonable certainty, "and the party who has caused the loss may not insist on theoretical perfection." *Entis v. Atlantic Wire & Cable Corporation*, 335 F.2d 759, 763 (2d Cir. 1964).

We hold that plaintiff-appellant is entitled to recover its net damages representing the reasonable current market value of the loss of use of the Mathios for that portion of the drydock period attributable to repairs necessitated by the Tumaco allision, not limited by the Gulf time charter rate. The amount of such damages must be determined on remand. For purposes of computing the amount on remand, we express no opinion at this time as to whether it is appropriate to assume, as appellant does, that upon the termination of the Gulf charter, the Mathios would of necessity be withdrawn from the long term time charter market, and become available for short term spot voyage charters, and therefore whether the relevant rate is that then prevailing for time or spot charters.

We believe that, upon this record, such profits may be determined without regard to any possible overlap period.[1] The stipulated facts previously quoted from the pretrial order show that the parties have agreed as to the precise length of the extension caused by the period off-hire, and also the date on which the vessel would have come off charter but for the Tumaco casualty. Whatever allowance which would have to be made for underlap or overlap has been eliminated from the computation by the parties' agreement as to the exact date of redelivery to the owner but for the appellee's negligence.

■ (B) Plaintiff-appellant also disputes the disallowance by the trial court of four (4) days off-hire at the Hoboken drydock attributable to owner's repairs. As to the exclusion of this time in computing lost profits, the trial court was correct. After the Tumaco allision, the Mathios was found seaworthy by ABS although it was recommended that collision damage be reexamined at the next regular drydock period. The vessel continued her operations thereafter. Awaiting a repair part, Pelineon scheduled drydocking for a time convenient to owner and charterer. The trial court found that this scheduling was planned so as to move ahead the next regularly scheduled drydock period by a few months. At the time that the drydocking was scheduled, Pelineon did not know that the vessel was in fact unseaworthy. Accordingly, the evidence justified the holding below that the vessel may recover lost profits only for that portion of the Hoboken repair period by which Tumaco collision repairs extended the time which the owner's routine repairs required. See *Skibbs A/S Dalfonn v. S/T Alabama*, 373 F.2d 101 (2d Cir. 1967); *The Pocahantas*, 109 F.2d 929, 931 (2d Cir.), cert. denied sub nom. *Eagle Transport Co. v. United States*, 310 U.S. 641, 60 S.Ct. 1088, 84 L.Ed. 1409 (1940).

■ (C) Since no reason was given for denying appellant the ordinary taxable costs as the prevailing party below, we also reverse on this point.

■ While the trial court has discretion under Rule 54(d), F.R.Civ.P. to allow or disallow costs, such discretion is not to be

---

1. Paragraph 8 of the charterparty provided in relevant part:

"Notwithstanding the provisions of Clause 3 hereof [the Clause fixing the term], should the vessel be upon a voyage at expiry of the period of this charter, Charterer shall have the use of the vessel at the same rate and conditions for such extended time as may be necessary for the completion of the round voyage on which she is engaged and her return to a port of redelivery as provided by this charter."

exercised arbitrarily. *Trans World Airlines, Inc. v. Hughes,* 515 F.2d 173 (2d Cir. 1975), *cert. denied* 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976). Upon remand the district court may determine upon the present record or additional submissions whether appellant has done anything to deserve imposition of the penalty of denial of costs.

This action is remanded to recompute plaintiff-appellant's damages consistently with the foregoing, and ascertain whether costs should be allowed in the district court. In all other respects, the judgment appealed from is affirmed, with costs to appellant in this Court.

Since it appears that Judge Boldt is not designated or available in the Southern District of New York at this time, our remand shall issue to the transferor Judge, Hon. Robert J. Ward, in accordance with local IAC Rule 12 of that district.