230

SUBSCRIPTION TELEVISION, INC., a corporation, Subscription Television of California, Inc., a corporation, Tolvision of America, Inc., a corporation, Plaintiffs-Appellants,

v.

SOUTHERN CALIFORNIA THEATRE OWNERS ASSOCIATION, a corporation, Northern California Theatre Owners, Inc., a corporation, Theatre Owners of America, a corporation, Allied States National Exhibitors Organizations, California Crusade for Free TV, a corporation, Amusement Corporation of America, a corporation, United California Theatres, Inc., a corporation, United Artists Theatre Circuit, Inc., a corporation, Pacific Drive-In Theatres Corp., a corporation, Fox West Coast Theatres Corporation, a corporation, American Broadcasting-Paramount Theatres, Inc., a corporation, National General Corporation, a corporation, Sero Amusement Company, a corporation, RKO Theatres, Inc., a corporation, Stanley Warner Corporation, a corporation, Stanley Warner Management Corporation, a corporation, Warner Theatres, Inc., a corporation, Roy C. Cooper, Arnold C. Childhouse, Graham Kisslingbury, Defendants-Appellees.

SUBSCRIPTION TELEVISION, INC., a corporation, Subscription Television of California, Inc., a corporation, Tolvision of America, Inc., a corporation, Plaintiffs-Appellees,

v.

SOUTHERN CALIFORNIA THEATRE OWNERS ASSOCIATION, a corporation, Northern California Theatre Owners, Inc., a corporation, Theatre Owners of America, a corporation, Allied States National Exhibitors Organizations, California Crusade for Free TV, a corporation, Amusement Corporation of Ameri-

ca, a corporation, United California Theatres, Inc., a corporation, United Artists Theatre Circuit, Inc., a corporation, Pacific Drive-In Theatres Corp., a corporation, Fox West Coast Theatres Corporation, a corporation, American Broadcasting-Paramount Theatres, Inc., a corporation, National General Corporation, a corporation, Sero Amusement Company, a corporation, RKO Theatres, Inc., a corporation, Stanley Warner Corporation, a corporation, Stanley Warner Management Corporation, a corporation, Warner Theatres, Inc., a corporation, Roy C. Cooper, Arnold C. Childhouse, Graham Kisslingbury, Defendants-Appellants.

Nos. 75–2059 and 75–1961.

United States Court of Appeals, Ninth Circuit.

May 31, 1978.

Latham & Watkins, Los Angeles, Cal., for plaintiffs-appellants.

Maxwell E. Greenberg, of Greenberg, Bernhard, Weiss & Karman, Los Angeles, Cal., Sheldon W. Presser, Beverly Hills, Cal., for defendants-appellees.

Before MERRILL and HUFSTEDLER, Circuit Judges, and THOMPSON,* District Judge.

MERRILL, Circuit Judge:

The question on appeal is whether the *Noerr-Pennington* doctrine [1] exempts from the Sherman Act a conspiracy or combination to restrain trade by securing the enactment by the voters of California of an initiative measure later held to be unconstitutional. The district court held that it did and granted a directed verdict for the defendants. This appeal was taken.[2] We affirm.

The case involves "subscription television," also referred to as "pay television," a new concept in television developed in the early 1960's by which the programs were to be transmitted by telephone lines and the subscriber would secure entertainment comparable to that presented in theatres offering contemporary motion pictures, drama,

---

* Honorable Gordon Thompson, Jr., United States District Judge for the Southern District of California, sitting by designation.

1. *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), and *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965).

2. Subscription Television's appeal against all the defendants except Amusement Corporation of America and the cross-appeals of those defendants were dismissed with prejudice by this court on March 9, 1978, pursuant to a stipulation of the parties.

dance and the like; and this without interruption by commercial advertising.

Appellant Subscription Television, Inc., was formed to engage in the business of pay television. It filed an initial registration statement with the Securities and Exchange Commission and proceeded in an effort to interest capital, announcing its intention to commence operations in Los Angeles and San Francisco. California theatre owners promptly organized with the objective of putting down this competitive threat to the theatre business. Their opposition took the form of seeking the enactment of direct legislation through California's initiative process. Their intention to do so was publicized by extensive advertising in the financial pages of newspapers throughout the country. An anti-pay television initiative was drafted. Known as Proposition 15, it qualified for the ballot and passed by a substantial margin in the general election on November 3, 1964. A year and a half later, in *Weaver v. Jordan*, 64 Cal.2d 235, 49 Cal.Rptr. 537, 411 P.2d 289, *cert. denied*, 385 U.S. 844, 87 S.Ct. 49, 17 L.Ed.2d 75 (1966), the Supreme Court of California held the Act to be unconstitutional as infringing the federal and state guaranties of free speech. Appellants, too exhausted financially to enjoy the fruits of their victory, having already abandoned their plans to engage in business, commenced this action for treble damages under § 4 of the Clayton Act, 15 U.S.C. § 15, alleging a conspiracy to restrain trade in violation of § 1 of the Sherman Act, 15 U.S.C. § 1. As we have noted, the district court, holding the *Noerr-Pennington* doctrine to apply, granted a directed verdict in favor of the defendants.

In *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961), the Supreme Court held that attempts to influence legislative action cannot be the basis of an antitrust violation, because:

"  *  *  *  the Sherman Act does not prohibit two or more persons from associating together in an attempt to persuade the legislature or the executive to take particular action with respect to a law that would produce a restraint or a monopoly."

365 U.S. at 136, 81 S.Ct. at 529. In spite of the trial court's finding that the sole purpose was to stifle competition through tactics which were deceptive and unethical, the Court found the lobbying activities to be immune from the antitrust laws because political activities are protected by the first amendment right of petition. The Court stated:

"The right of the people to inform their representatives in government of their desires with respect to the passage or enforcement of laws cannot properly be made to depend upon their intent in doing so."

365 U.S. at 139, 81 S.Ct. at 530.

In *United Mine Workers v. Pennington*, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965), the Court made it clear that the defendants' purpose in seeking political action is irrelevant, because:

"*Noerr* shields from the Sherman Act a concerted effort to influence public officials regardless of intent or purpose  *  *. Joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition."

381 U.S. at 670, 85 S.Ct. at 1593.

■ Appellants do not argue that the *Noerr-Pennington* doctrine is inapplicable because the theatre owners sought political action through the initiative process rather than through the legislature. This concession is sound. It is now clear that the same principles govern attempts to influence legislative, executive, administrative and judicial proceedings and should also govern attempts to legislate through the initiative process.[3]

---

3. *Franchise Realty Interstate Corp. v. S. F. Local Joint Exec. Bd. of Culinary Workers*, 542 F.2d 1076, 1080 n. 3 (9th Cir. 1976), *cert. denied*, 430 U.S. 940, 97 S.Ct. 1571, 51 L.Ed.2d 787 (1977); *Rodgers v. F. T. C.*, 492 F.2d 228

(9th Cir.), *cert. denied*, 419 U.S. 834, 95 S.Ct. 60, 42 L.Ed.2d 60 (1974); *California Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972).

Appellants contend that the district court erred in granting a directed verdict for the defendants and thereby taking the case from the jury, because the evidence would justify a finding that the theatre owners' activities were a sham; that they were actually designed to interfere with the public offering of Subscription Television's stock and that the theatre owners knew that Proposition 15 was unconstitutional.

Appellants point out that the *Noerr-Pennington* doctrine protects only those activities that are a "genuine effort to influence legislation." *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* supra, 365 U.S. at 144, 81 S.Ct. 523. They rely on the statement in *Noerr* that:

"There may be situations in which a publicity campaign, ostensibly directed toward influencing governmental action, is a mere sham to cover what is actually nothing more than an attempt to interfere directly with the business relationships of a competitor and the application of the Sherman Act would be justified."

365 U.S. at 144, 81 S.Ct. at 533. Subscription Television argues that the initiative itself and especially the initial advertisements placed by the defendants were actually intended to interfere with Subscription Television's public offering and to eliminate Subscription Television as a potential competitor by blocking its initial financing efforts.

We cannot agree. The Court in *Noerr* held that the railroad's publicity campaign was immune even though the trial court had found that its sole purpose was anticompetitive, finding the sham exception inapplicable, because:

"No one denies that the railroads were making a genuine effort to influence legislation and law enforcement practices. Indeed, if the version of the facts set forth in the truckers' complaint is fully credited, as it was by the courts below, that effort was not only genuine but also highly successful. Under these circumstances, we conclude that no attempt to interfere with business relationships in a

manner proscribed by the Sherman Act is involved in this case."

365 U.S. at 144, 81 S.Ct. at 533. This court has narrowly interpreted the sham exception, *Franchise Realty Interstate Corp. v. S. F. Local Joint Exec. Bd. of Culinary Workers,* supra, 542 F.2d at 1081.

■ In this case it is clear from the record that the theatre owners' advertisements, which announced that an initiative against pay television was being prepared for the California ballot, were a preliminary step in the initiative process. The theatre owners' activities were not a sham because they were actually seeking and did obtain the desired legislative action. As in *Noerr,* the theatre owners' efforts were "not only genuine but also highly successful" and do not violate the Sherman Act in spite of any anticompetitive purpose. 365 U.S. at 144, 81 S.Ct. at 533.

Appellants also contend that the *Noerr-Pennington* immunity does not apply where the political action sought is illegal or unconstitutional and that the theatre owners should be liable under the Sherman Act because they knew or should have known that the initiative prohibiting pay television was unconstitutional. We disagree. There is no question in this case concerning the legality of the initiative process or the election; the initiative was passed in accordance with California law. The content of the initiative was not unquestionably unconstitutional, see *Weaver v. Jordan, supra* (Mosk, J., dissenting), and, as the election indicated, was widely supported by the public.

■ The *Noerr-Pennington* doctrine is based on the first amendment right of petition and such a right would be considerably chilled by a rule which would require an advocate to predict whether the desired legislation would withstand a constitutional challenge in the courts and to expose itself to a potential treble damage antitrust action based on that prediction. The fact that the legislative action sought is subsequently declared unconstitutional does not

remove the immunity from the antitrust laws created by the *Noerr-Pennington* doctrine. As noted in *Franchise Realty, supra,* "We know of no case that holds that joint action which succeeds in persuading a public body to make an erroneous decision can give rise to a cause of action under the Sherman Act." 542 F.2d at 1079 n. 2.

█ The theatre owners in a cross-appeal contend that the district court erred in ordering all parties to bear their own costs without explaining why it did not award costs to the defendants as the prevailing parties under Fed.R.Civ.P. 54(d).

Under Fed.R.Civ.P. 54, the prevailing party is entitled to costs unless the court orders otherwise. Here the court specifically held that each party should bear its own costs but failed to specify why it was not following the general rule of awarding costs to the prevailing parties. The theatre owners argue that this failure to specify reasons constitutes an abuse of discretion and that this court should reverse and award costs to the appellees. The Third Circuit has adopted this argument, *Samuel v. Univ. of Pittsburg,* 538 F.2d 991, 999 (3d Cir. 1976).

Other courts have held that the trial court must state reasons for the denial of costs so that the appellate court will be able to determine whether or not the trial court abused its discretion. *See, e. g., Walters v. Roadway Express, Inc.,* 557 F.2d 521, 526 (5th Cir. 1977); *Compania Pelineon De Navegacion v. Texas Petroleum Co.,* 540 F.2d 53, 56 (2d Cir. 1976), *cert. denied,* 429 U.S. 1123, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977).

We agree with this view. The matter must, then, be remanded to the district court for amplification of its order.

Judgment of the district court granting a directed verdict in favor of the appellees is affirmed.

Order of the district court denying costs is vacated and the matter remanded for further proceedings.