Naomi HINSON, Individually and as next friend of William G. Hinson, Jr., Vertre Lee Stanfield, next friend of Treavor Revelle Stanfield, Derek Wayne Stanfield and James Christopher Stanfield, Eleanor Meyers, Guardian of the Estate of Treavor Revelle Stanfield, Derek Wayne Stanfield and James Christopher Stanfield, Plaintiffs,

v.

SS PAROS, in rem and Leeward Navigation Ltd., in personam, Defendants.

Texas Employers' Insurance Association, Intervenor.

Civ. A. No. 74–H–1270.

United States District Court, S. D. Texas, Houston Division.

Nov. 16, 1978.

Mandell & Wright, Sidney Ravkind, Houston, Tex., for plaintiff Naomi Hinson.

Dyer & Henkel, Curtis Dyer, Corpus Christi, Tex., for plaintiffs Vertre Lee Stanfield and Eleanor Meyers.

Eastham, Watson, Dale & Forney, John P. Forney, Jr., Houston, Tex., for defendants.

Fulbright & Jaworski, Theodore Goller, Jr., Houston, Tex., for intervenor.

MEMORANDUM

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

STERLING, District Judge.

This case was tried before the court, August 29–September 6, 1977. Plaintiff, Naomi Hinson, on her own behalf, and as next friend and natural guardian of a minor child, and intervening Plaintiff, Eleanor Meyers, as next friend and guardian of three minor children, brought this suit in admiralty to recover damages from Defendants occasioned by the death of William G. Hinson, who was employed as a longshoreman by T. Smith & Son (Texas), Inc., aboard Defendants' vessel on or about September 16, 1974, in the Port of Houston, Texas. Intervenor, Texas Employers' Insurance Association, brought an intervening complaint to recover from Defendants the amounts expended in compensation and funeral expenses under the provision of the Longshoremen and Harbor Workers' Compensation Act, and filed a cross-claim against Defendants seeking damages for

amounts it must pay in the future to the heirs of William G. Hinson as a result of his death. Having heard all the evidence, the court enters the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. On September 16, 1974, Plaintiffs' decedent, William G. Hinson, a longshoreman employed by T. Smith & Son (Texas), Inc., was working aboard the vessel PAROS which was owned by Defendant Leeward Navigation, Ltd. and which was situated in the navigable waters of the United States in the Port of Houston, Texas. Texas Employers' Insurance Association was the workmen's compensation carrier for T. Smith & Son (Texas), Inc. and therefore insured its liability under the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901, et seq.

2. On September 16, 1974, the longshoremen began working aboard the S/S PAROS at the Equity Grain Elevator loading grain to the vessel at 7:00 a. m. At that time, Plaintiffs' decedent was employed as foreman of the gang working the vessel's No. 2 hatch.

3. At approximately 8:15 a. m. on September 16, 1974, William Hinson walked to the inboard or port rail of the vessel in order to talk to Louis Guillory and Walton Guillory who were seated on a bitt near the port rail.

4. The port rail consisted of a series of stanchions, each of which contained two eyes. Through these eyes were passed two chains which constituted the vessel's rail.

5. Hinson walked between the bitts upon which Louis and Walton Guillory were seated and the rail. He then turned to talk to them and placed one hand upon the chain rail itself. At that moment, and without warning, the upper chain gave way and Hinson fell over the side of the vessel. He managed to cling to the chain momentarily by one hand, but then fell striking one of the pier's fenders and thence into the waters of the Houston Ship Channel where he drowned.

6. Subsequent examination of the chain revealed that at the point where it parted the link was completely wasted by rust and it had simply pulled apart.

7. Testimony presented by steamship company officials, and others, clearly indicates that the vessel owners had a continuing duty to inspect these chains in order to insure the safety of those working aboard the vessel. The inspection performed by Defendants' personnel failed to reveal the wasted condition of the link in question. The failure of such inspection constitutes negligence on behalf of Defendants, and such negligence was a proximate cause of Plaintiffs' decedent's death.

8. Texas Employers' Insurance Association, a compensation insurance carrier for Plaintiffs' decedent's employer, has expended $35,403.18 to the date of trial in compensation benefits paid to or on behalf of Plaintiffs, and is entitled to a lien in that amount against any judgment awarded to Plaintiffs herein.

9. William G. Hinson was the ceremonial husband of Naomi Hinson and the natural father of William Hinson, Jr.

10. William G. Hinson was the natural father of the minors Treavor Stanfield, Derek Stanfield, and James Stanfield, who are thus William G. Hinson's illegitimate children by Vertre Lee Stanfield.

11. William G. Hinson, prior to and until his death, provided financial support for his wife, Naomi Hinson, and legitimate son, William Hinson, Jr., as well as for Vertre Lee Stanfield, now deceased, and his illegitimate children, Treavor, Derek, and James Stanfield. William G. Hinson thus maintained two households, neither knowing of the existence of the other.

12. William G. Hinson, prior to and until his death, provided care, influence, guidance, affection, and society to Naomi Hinson, William Hinson, Jr., and Treavor, Derek, and James Stanfield. As a direct result of his death, these Plaintiffs have been wrongfully deprived of William G. Hinson's care, influence, guidance, affection, and society.

13. William G. Hinson was 66 years old at the time of his death and earned $21,000 the last year of his life. As a foreman he was able to earn money as a longshoreman without hard manual labor.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and of the parties.

2. The owners of the S/S PAROS had a continuing duty to inspect and replace the safety chains that are an integral part of the vessel itself in order to insure the safety of those working on board the vessel, including longshoremen in the position of William G. Hinson.

3. Defendants, owners, negligently failed adequately to inspect and repair the chain rail in question on or before September 16, 1974, and such negligent failure was the proximate cause of Plaintiffs' decedent's death.

4. On the occasion in question, William G. Hinson was not negligent in leaning against the chain rail or in failing to detect the wasted link.

5. In view of the evidence that William Hinson had, in effect, two families, and was living with two different women and sets of children at the time of his death, the value of his advice, counsel, guidance, affection, and society as items of damages must be calculated as to each family. Damages due to loss of the above have been sustained by the Plaintiffs on account of the death of their decedent as follows:

| | |
|---|---|
| Naomi Hinson | – $15,000.00 |
| William Hinson, Jr. | – $15,000.00 |
| Treavor Revelle Stanfield | – $15,000.00 |
| James Christopher Stanfield | – $15,000.00 |
| Derek Wayne Stanfield | – $15,000.00 |

6. William Hinson undoubtedly did suffer fear of life and pain before his death. Although only the fleetest seconds passed between the time William G. Hinson fell and the time he died, damages for pain and suffering have been sustained, which the court finds to be in the amount of $5,000.00.

7. The evidence presented as to the way in which William G. Hinson divided his bounty between the two households was skimpy at best. In consequence of this, William G. Hinson's age, his prior earnings and the life style he maintained, the court finds that economic damages for loss of financial support as a result of William G. Hinson's death have been sustained as follows:

| | |
|---|---|
| Naomi Hinson | – $40,000.00 |
| William Hinson, Jr. | – $ 5,000.00 |
| Treavor Revelle Stanfield | – $ 5,000.00 |
| James Christopher Stanfield | – $ 5,000.00 |
| Derek Wayne Stanfield | – $ 5,000.00 |

8. Intervenor, Texas Employers' Insurance Association (Texas Employers'), has voluntarily paid compensation to the Plaintiffs without a statutory award, in the sum of $35,403.18 at the time of trial. Texas Employers' has a non-statutory right of subrogation to such amounts paid, as if such an award had been made pursuant to 33 U.S.C. § 933(b). *Louviere v. Shell Oil Co.*, 509 F.2d 278 (5th Cir. 1978); *Landon v. Lief Hoegh and Co., Inc.*, 521 F.2d 756 (2d Cir. 1975); *Davillier v. Cavn Venezuelan Line*, 407 F.Supp. 1234 (E.D.La.1976).

9. Texas Employers', citing *Federal Marine Terminals v. Burnside Shipping*, 394 U.S. 404, 89 S.Ct. 1144, 22 L.Ed.2d 371 (1969), has alleged an independent cause of action based upon negligence against the shipowner to recover, not only the amount of compensation paid to the various Plaintiffs to date (its "lien"), but seeks to recover the total projected amount of workmen's compensation benefits it will probably have to pay all Plaintiffs in the future, which is the sum of $335,987.00. Such recovery must be denied.

In 1972, Congress, by the Amended Longshoremen's and Harbor Workers' Act, 33 U.S.C. §§ 901, et seq., substantially raised the compensation rate to longshoremen suffering injury or death. The widow in this case receives over $300.00 every two weeks. The widow was nine years younger than the deceased who was 66 years old at the time of his death. The Plaintiffs' damages are based upon the life and work expectancy of

their 66 year old decedent. The compensation benefits payable to Plaintiffs are based, among other things, upon the life expectancy of the Plaintiffs. The work-life expectancy of Plaintiffs' decedent is relatively short while the life expectancy of Plaintiffs is relatively long. Thus, the expected compensation benefits are far greater than the damages recoverable by the Plaintiffs.

The court concludes that the Amended Act as a whole, and § 905(b) in particular, has modified *Burnside* to the extent that employers or their compensation insurance carriers are limited to the recovery of compensation benefits paid, as provided in § 933, and that in no instance can they recover more than the injured worker or his beneficiaries.

Subsection (b) of § 905 is new, and provides as follows:

"In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter."

No case directly in point has been discovered. However, the court concludes that the suggestion in *Landon v. Lief Hoegh & Co.*, 521 F.2d 756, 761 (2nd Cir. 1975), that *Burnside* has become obsolete by virtue of § 905(b) of the Amended Act is correct. Such suggestion is as follows:

"It may be, too, that a *Burnside* type of action no longer exists in the light of the provision that 'the remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter'. [6]

"[6] The argument would be that section 905(b) includes employer and carrier in the phrase 'or anyone otherwise entitled to recover damages by reason thereof' and allows only actions under section 933 which includes subrogation actions."

■ Thus, this court concludes that Congress did not intend that the employer or his compensation carrier would be permitted to recover from the shipowner damages in excess of those for which the shipowner was liable to the employee or his beneficiaries. Congress stated its intention in § 905(b) that the remedies specified in the Amended Act were to be exclusive.

■ The recovery sought in this regard involves speculative damages contrary to the rule against such recoveries. *Story Parchment Co. v. Paterson Co.*, 282 U.S. 555, 51 S.Ct. 248, 75 L.Ed. 544 (1931); *Aldon Industries, Inc. v. Don Myers & Associates, Inc.*, 517 F.2d 188 (5th Cir. 1975); *Compania Pelineon De Navegacion, S. A. v. Texas Petroleum Co.*, 540 F.2d 53 (2nd Cir. 1976).

10. Moreover, the amount of compensation benefits which Texas Employers' may have to pay in the future depends upon a number of contingencies such as the continued life of the beneficiaries, the possible remarriage of the widow and school attendance by the children.

11. Section 933(f) of Title 33 U.S.C. provides:

"(f) If the person entitled to compensation institutes proceedings within the period prescribed in subdivision (b) of this

section the employer shall be required to pay as compensation under this chapter a sum equal to the excess of the amount which the Secretary determines is payable on account of such injury or death over the amount recovered against such third person."

In this case, no statutory award has been made. This court is hesitant to accept the figure proposed by the Intervenor as the amount which will ultimately be paid in compensation. Until an award has been made by the Secretary which fixes the boundaries of payment to the beneficiaries of the deceased, it is impossible for this court to hold, one way or the other, as to the proper disposition of the funds recovered by the judgment to be entered in this case.

■ The problem becomes one from which the Congress gives no assistance other than from the obvious meanings of their words. Under 33 U.S.C. § 933(e), if the employer brings action against the ship or its owner, there is an explicit procedure for the disposition of the fund which results. However, where the injured or deceased longshoreman brings suit, § 933(f) provides for an altogether different result. If the injured, covered, employee brings suit on his own behalf, he, or as in this case his beneficiaries, are entitled to the full "tort" recovery from the vessel or its owners. The employer, or its carrier, is entitled, by "assignment" or "subrogation", to recoup what has been paid in the way of compensation. What, then, occurs when the "tort" recovery of the beneficiaries of the decedent is less than the total compensation which may or must be paid in the future, but more than has been paid to date? The court concludes that the balance of the judgment which exceeds what has been paid to date shall be paid to the beneficiaries at this time. The compensation carrier must continue to make its periodic payments. At such time as a formal award is made, the carrier will be entitled to credit against such award in the amounts paid to Plaintiffs under the judgment in this case. Congress, in 33 U.S.C. § 933(f), indicates a preference that the lump sum judgment be given to the Plaintiffs, and having Texas Employers' credit that amount against anticipated payments.

12. The judgment in this case may or may not result in adequate compensation for Plaintiffs' attorneys. Reallocation to Plaintiffs' attorneys of the money distributed to Texas Employers' under their indemnity lien may be allowed. *Mitchell v. Scheepvaart Maatschappij Trans-Ocean*, 579 F.2d 1274, 1281 (5th Cir. 1978). If agreement upon this question cannot be reached, a hearing will be set.

13. In the event that any of the foregoing findings of fact also constitute conclusions of law, they are adopted as conclusions of law. In the event that any of the foregoing conclusions of law also constitute findings of fact, they are also adopted as findings of fact.

The parties shall submit an agreed form of judgment to the court in accordance with these findings of fact and conclusions of law.