636 F.2d 195
 1981-1 Trade Cases 63,874
 FIRST NATIONAL BANK OF OMAHA, a national banking association
and First of Omaha Service Corporation, a Nebraska
Corporation, Appellants,
v.
The MARQUETTE NATIONAL BANK OF MINNEAPOLIS, a national
banking association, Appellee,
St. Paul Fire and Marine Insurance Company, a Minnesota Corporation.
 No. 80-1043.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Sept. 9, 1980.
Decided Nov. 25, 1980.
 
 William E. Morrow, Jr., argued, Donald J. Buresh of Swarr, May, Smith & Andersen, Omaha, Neb., and Clay R. Moore of Mackall, Crounse & Moore, Minneapolis, Minn., for plaintiffs-appellants.
 Levitt, Palmer, Bowen, Rotman & Share, by J. Patrick McDavitt argued, Minneapolis, Minn., for defendant-appellee The Marquette Nat. Bank of Minneapolis.
 Before BRIGHT, Circuit Judge, GIBSON, Senior Circuit Judge, and STEPHENSON, Circuit Judge.
 STEPHENSON, Circuit Judge.
 
 
 1
 Plaintiffs-appellants First National Bank of Omaha (First National) and First of Omaha Service Corporation (Omaha Service) brought this action seeking damages from defendant-appellee, the Marquette National Bank of Minneapolis (Marquette). Appellants' action is based on Marquette's lobbying activity in the passage through the Minnesota legislature, in April 1976, of a twelve percent per annum interest ceiling on charges by bank credit card issuers. Additionally, they seek relief as a result of Marquette's successful injunctive suit in May 1976, against Omaha Service for its charging interest in excess of twelve percent.
 
 
 2
 Appellants advanced several theories for relief. The district court[1] granted appellees' motion to dismiss and for summary judgment. We affirm.
 
 
 3
 Appellants contend that the district court erred: (1) in granting partial summary judgment on appellants' antitrust claim on the grounds that defendant's lobbying and litigation activities were protected by the First Amendment; (2) in dismissing plaintiffs' claim under 42 U.S.C. § 1983 for failure to state a cause of action on the grounds that the defendant's lobbying and litigation activities were protected by the First Amendment, and because 12 U.S.C. §§ 85 and 86 do not give national banks "rights, privileges and immunities," and that any "rights, privileges and immunities," under 12 U.S.C. §§ 85 and 86 are not those sought to be protected by 42 U.S.C. § 1983; (3) in granting summary judgment on plaintiffs' malicious prosecution claim on the grounds that defendant had probable cause to bring its prior suit against plaintiff; (4) in dismissing plaintiff's abuse of process claim on the grounds that the process was not used to accomplish a purpose outside the prior proceeding; and (5) in granting partial summary judgment on plaintiffs' tortious interference with business claim on the grounds that defendant's lobbying and litigation activities were protected by the First Amendment.
 
 
 4
 An excellent summary of the facts appears in the district court opinion First National Bank of Omaha v. Marquette National Bank of Minneapolis, 482 F.Supp. 514, 515-16 (D.Minn.1979) and need not be recited here. We have carefully examined the district court's opinion and find no error except with respect to the reasons for dismissing the 42 U.S.C. § 1983 count. Therefore, we adopt the opinion of the district court for all except its discussion of the section 1983 claim.
 
 
 5
 Quite briefly, appellants allege that Marquette violated 42 U.S.C. § 1983 by lobbying for the legislation placing an interest ceiling on bank card credit, by obtaining it, and by litigating for its enforcement. Allegedly, this is a violation because 12 U.S.C. § 85 preempts the states' power to regulate the interest of national banks. As a result, appellants contend Marquette's actions constituted a deprivation, under color of the Minnesota statute, of First National and Omaha Service's rights conveyed by 12 U.S.C. § 85.
 
 
 6
 At the time of the district court's opinion, it did not appear that section 1983 provided a cause of action for every deprivation of a federal statutory right. The primary case on this point, Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 615-16, 623-27, 644-46, 99 S.Ct. 1905, 1915, 1919-21, 1929-30, 60 L.Ed.2d 508 (1979) appeared to place some limits on the breadth of section 1983. However, the Supreme Court, in a more recent case, Maine v. Thiboutot, --- U.S. ---, 100 S.Ct. 2502, 2504-06, 65 L.Ed.2d 555 (1980), places these limitations in question. The language in Thiboutot could be interpreted to mean that the term "any law" as used in section 1983 should apply section 1983 to every deprivation of a federal statutory right.[2] However, this pronouncement would guarantee that the violation of any federal law or the deprivation of any right provided by a federal statute would create a cause of action under section 1983.
 
 
 7
 Appellants argue that Marquette's lobbying activities, designed to obtain the passage of the Minnesota statute, constituted a violation of federal law because the state law was contrary to 12 U.S.C. § 85. We cannot accept this assertion because 42 U.S.C. § 1983 requires state action and the deprivation of a right, privilege or immunity. Until the law was passed there was no state action. See Weiss v. Willow Tree Civic Association, 467 F.Supp. 803, 810 (S.D.N.Y.1979).
 
 
 8
 Even if we concluded that state action were involved, there is an additional reason for not finding a section 1983 violation. This basis for immunity is also our rationale for finding that the passage and enforcement of the act was not a section 1983 violation.
 
 
 9
 Despite the broad language of the Thiboutot opinion, we do not believe that the Supreme Court intended that the Civil Rights Act be read to create a cause of action where a state law conflicts with the National Bank Act. That Act establishes a broad national system of regulation of the banking industry. One section of the Act establishes the rate of interest that national banks may charge on loans. 12 U.S.C. § 85. This section authorizes national banks to collect interest at the rate allowed to the most favored lender in the state in which the national bank is located. First National Bank in Mena v. Nowlin, 509 F.2d 872, 880 (8th Cir. 1975). This section, in effect, uses state law as the substitute for federal law in measuring permissible interest rates. See Roper v. Consurve, Inc., 578 F.2d 1106, 1115 (5th Cir. 1978), cert. denied, 440 U.S. 945, 99 S.Ct. 1421, 59 L.Ed.2d 633 (1979). Although it may be an exercise in semantics to argue whether the authority under section 85 is or is not a "right" in the abstract sense, we do not believe that such authority is a right, privilege or immunity secured by federal law within the meaning of 42 U.S.C. § 1983.
 
 
 10
 A bank's ability to charge a certain rate of interest, incidental to a broad regulatory scheme, is not in the nature of the rights protected by the Civil Rights Act. The civil rights statutes were passed for the purpose of "ensuring a right of action to enforce the protections of the Fourteenth Amendment and the federal laws enacted pursuant thereto." Chapman v. Houston Welfare Rights Organization, 441 U.S. 600, 611, 99 S.Ct. 1905, 1912, 60 L.Ed.2d 508 (1979). The Supreme Court decision in Thiboutot makes clear that section 1983 does protect rights established by statutes enacted pursuant to authority other than the Fourteenth Amendment. The opinion, however, does not change the type of statutory rights protected by section 1983. Thiboutot involved the rights of individuals pursuant to a federally-created welfare program. These rights of beneficiaries to receive minimal subsistence and support under the AFDC program so as to be able to obtain food and shelter represent important personal rights akin to fundamental rights protected by the Fourteenth Amendment. As the Fifth Circuit wrote in a similar context, "(s)uch fundamental human, highly personalized rights are just the stuff from which § 1983 claims are to be made." Gomez v. Florida State Employment Service, 417 F.2d 569, 579 (5th Cir. 1969) (section 1983 action for violation of rights under Wagner-Peyser Act). On the other hand, rights incidental to the National Bank Act are qualitatively different and not within the contemplation of section 1983.
 
 
 11
 Justice Powell, dissenting in Thiboutot, notes that the majority opinion "does not consider the nature or scope of the litigation it has authorized."[3] 100 S.Ct. at 2513 (Powell, J., dissenting). The Supreme Court's holding that section 1983 provides a cause of action for interference with rights under the Social Security Act does not represent a significant departure from prior case law or expansion into areas unrelated to the interests protected by the Fourteenth Amendment. A holding by this court, establishing a cause of action for interference with rights pursuant to the National Bank Act, would represent a dramatic and unwarranted extension of the Civil Rights Act. We do not believe that such a departure is mandated by the opinion in Thiboutot or that such a cause of action was within the intent of the Congress that enacted the civil rights statutes. We, therefore, hold that state interference with the authority of national banks under 12 U.S.C. § 85 does not give rise to a cause of action under 42 U.S.C. § 1983.[4]
 
 
 12
 We recognize that a literal reading of 42 U.S.C. § 1983 in light of the Thiboutot case might result in a finding that Marquette's activity was violative of section 1983. Yet, we cannot accept the assertion that Congress intended to prohibit good faith lobbying, legislation and litigation. We find this to be especially true in a case involving economic regulation and where the interaction between 12 U.S.C. § 85 and the Minnesota law was so much in doubt.[5]
 
 
 13
 In a case such as this where there has been good faith throughout the passage and enforcement of a law involving economic and business regulation and in an area of great turmoil concerning the validity of the state law, it is repugnant to our rights of free speech and petition to penalize the party who ultimately loses the battle. To hold otherwise would intolerably chill the legislative and judicial processes and restrict functions that are fundamental to our form of government while extending the coverage of section 1983 beyond that intended by Congress. Therefore, we find that the lobbying, passage and enforcement of the Minnesota law was immune from section 1983 violation.
 
 
 14
 In conclusion, we hold that the district court did not err in granting summary judgment and dismissing the non-42 U.S.C. § 1983 counts raised by First National or Omaha Service. Its dismissal of the section 1983 claim was also proper for the reasons stated above.
 
 
 15
 Affirmed.
 
 
 
 [1]
 The Honorable Donald D. Alsop, United States District Judge for the District of Minnesota
 
 
 [2]
 The majority stated in its opinion that:
 The question before us is whether the phrase "and laws," as used in § 1983, means what it says, or whether it should be limited to some subset of laws. Given that Congress attached no modifiers to the phrase, the plain language of the statute undoubtedly embraces respondents' claim that petitioners violated the Social Security Act.
 Congress was aware of what it was doing, and the legislative history does not demonstrate that the plain language was not intended. Petitioners' arguments amount to the claim that had Congress been more careful, and had it fully thought out the relationship among the various sections, it might have acted differently. That argument, however, can best be addressed to Congress, which, it is important to note, has remained quiet in the face of our many pronouncements on the scope of § 1983.
 Maine v. Thiboutot, --- U.S. ----, 100 S.Ct. 2502, 2504-06, 65 L.Ed.2d 555 (footnotes omitted). This language suggests that section 1983 actions should be broadly permitted, even in areas outside welfare, First Amendment, and social security cases. However, the Court fails to say this explicitly. In light of the narrow holding in the case concerning social security cases, the general language in the opinion, and the major ramifications of such a holding, we do not think such an expansion of section 1983 is justified.
 
 
 [3]
 The majority opinion relies primarily on cases litigating statutory claims arising under the Social Security Act. See 100 S.Ct. at 2504-05. The dissent criticizes the majority as likely authorizing federal litigation against state officers whenever a person claims injury arising from any of a plethora of federal-state cooperative programs. Id. at 2513 (Powell, J. dissenting). It is our view that section 1983 does not authorize a suit for an alleged violation of a purely economic regulatory statute affecting only commercial institutions as is the case here
 
 
 [4]
 We note that the immunity from antitrust law that is recognized in permitting individuals or associations to influence legislation, Subscription T.V., Inc. v. Southern Calif. Theatre Owners Ass'n, 576 F.2d 230, 232-33 (9th Cir. 1978); Eastern RR Presidents Conf. v. Noerr Motor Freight, Inc., 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961); litigation, California Motor Transport Co. v. Trucking Unlimited, 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); or administrative relief, United Mine Workers v. Pennington, 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965) may also extend to allegations of section 1983 violations. The interests in protecting citizens' right of petition and free speech that were found to outweigh the statutory restrictions in those cases seem equally as strong here and could provide an alternative grounds for immunizing Marquette from penalty under section 1983. See Missouri v. National Organization for Women, Inc., 620 F.2d 1301 (8th Cir. 1980)
 
 
 [5]
 The Minnesota act was passed in April 1976, yet it was not until the second Fisher case in 1977, Fisher v. First National Bank of Chicago, 538 F.2d 1284 (7th Cir. 1976), cert. denied, 429 U.S. 1062, 97 S.Ct. 786, 50 L.Ed.2d 778 (1977) (Fisher I ); Fisher v. First National Bank of Omaha, 548 F.2d 255 (8th Cir. 1977) (Fisher II ), that the courts fully appreciated the protections of 12 U.S.C. § 85. Furthermore, in light of the United States Supreme Court's granting of certiorari in litigation involving the enforcement of the Minnesota act, Marquette National Bank of Minneapolis v. First of Omaha Service Corp., 262 N.W.2d 358 (D.Minn.1977), cert. granted, 436 U.S. 916, 98 S.Ct. 2261, 56 L.Ed.2d 757 (1978), aff'd 439 U.S. 299, 99 S.Ct. 540, 58 L.Ed.2d 534 (1978), there was continued doubt of the effect of 12 U.S.C. § 85 until well into 1978. Therefore, it was not until the Fisher cases and the review of the law involved in the present case that the "rights, privileges, and immunities" conveyed by 12 U.S.C. § 85 were fully understood