Mary HEWITT, Administratrix of the Estate of Henry Hewitt, Plaintiff,

v.

UNITED STATES of America, Defendant.

Civ. A. No. 78–2614–F.

United States District Court, D. Massachusetts.

Nov. 8, 1982.

Leonard S. Michelman, Michelman & Feinstein, Springfield, Mass., for plaintiff.

Jeffrey Axelrad, c/o Neil R. Peterson, Asst. Chief Torts Section—Civil Division, Washington, D.C., Marianne B. Bowler, Asst. U.S. Atty., for defendant.

## MEMORANDUM

FREEDMAN, District Judge.

This action is brought pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and the National Influenza Immunization Program of 1976, Public Law 94–380, 42 U.S.C. § 247b, which established the FTCA as the vehicle for asserting claims arising out of the Swine Flu Program against the United States. The government has stipulated that Henry Hewitt contracted Guillain-Barre Syndrome ("GBS") as a result of the administration of the swine flu vaccine. Therefore, liability having been conceded, this Memorandum will be limited to the issue of damages.

## FINDINGS OF FACT

1. On November 21, 1976 Henry Hewitt received a swine flu immunization as part of the National Swine Flu Immunization Program of 1976, 42 U.S.C. § 247b(h), a program funded and directed by the United States government.

2. At the time Henry Hewitt received the swine flu vaccine, he was 65 years and 10 months of age.

3. Prior to the time Henry Hewitt received the swine flu vaccine, he suffered from cardiac problems as far back as approximately 1960. These problems included an enlarged heart, rapid pulse, congestion of the lungs and shortness of breath.

4. Prior to the time Henry Hewitt received the swine flu vaccine on November 21, 1976, he had been hospitalized on an emergency basis on two occasions because of his cardiac problems.

5. Prior to the time Henry Hewitt received the swine flu vaccine on November 21, 1976, he was receiving several medications, including digitalis, to control his heart problems.

6. From 1932 to 1974 Henry Hewitt was employed by the City of Springfield as a school teacher.

7. In 1974 Henry Hewitt retired from teaching for medical reasons, on the advice of his personal physician, Dr. James Lewis. Prior to retiring Henry Hewitt exhausted several hundred days of sick leave.

8. The United States has stipulated that as a result of receiving the swine flu vaccine Henry Hewitt contracted GBS.

9. Henry Hewitt filed the appropriate administrative claim with the Department of Justice. Upon Henry Hewitt's death and the appointment of the plaintiff as the Administratrix of his estate, the plaintiff filed the appropriate amendment to the administrative claim with the Department of Justice. After six months had expired and the administrative claims had not been acted upon and were deemed denied, the plaintiff brought an action in this Court.

10. On or about November 30, 1976, after receiving the swine flu vaccine, Henry Hewitt had trouble urinating and defecating.

11. In early December of 1976, he had numbness and partial paralysis in his lower extremities. He then contacted his personal physician, Dr. James Lewis of 96 Williams Street, Longmeadow, Massachusetts.

12. On December 20, 1976, after examining Henry Hewitt on two separate occasions, Dr. Lewis called in Dr. John Warren Sullivan, a neurologist, to take over the treatment of Henry Hewitt.

13. Henry Hewitt was hospitalized as a result of contracting GBS from December 20, 1976 until August 24, 1977, on which date he died of causes related to his illness.

14. During the period of his hospitalization, Henry Hewitt suffered and was paralyzed from the waist down and was unable to experience sensation in that area.

15. Throughout Henry Hewitt's hospitalization, he endured many painful and uncomfortable tests and medical procedures such as spinal taps, blood samples, and x-rays.

16. Henry Hewitt had a catheter inserted for connection to his bladder to provide a reservoir for his uncontrollable bladder. His bedding had to be changed frequently because of his inability to control his bowels. As a result, he endured daily enemas which were very uncomfortable during his hospitalization. He had bed sores and required treatment by a dermatologist and the application of salves and lotions to the infected areas.

17. As a result of contracting GBS, Henry Hewitt experienced pain and suffering.

18. As a result of his hospitalization, Henry Hewitt incurred medical bills in the amount of $41,762.08.

19. The funeral expenses of Henry Hewitt total $1,400.00.

20. Henry Hewitt's life expectancy was 6.96 years from November 21, 1976. *See* Deposition of Louis Levinson, at 13.

21. Lost and future earnings are at best speculative. Henry Hewitt was retired at the time of his death and not working in any other capacity. Although a vocational expert testified that Henry Hewitt could have earned a certain sum of money as a school teacher or tutor, Henry Hewitt was doing neither at the time of the vaccination.

Given Henry Hewitt's heart condition, age, physical health, forced retirement, and the fact he did not tutor after he retired, all lead me to believe that any lost or future earnings would be negligible.

22. Henry Hewitt is survived by a widow, Mary R. Hewitt, and two adult children, Henry Frederick Hewitt and Elizabeth May Miles. On November 21, 1976 when he was vaccinated, Mary Hewitt was 62 years of age, Henry Frederick Hewitt was 30 years of age, and Elizabeth May Miles was 26 years of age. Mary Hewitt suffered a loss of companionship and affection as the result of her husband's illness and death, and that she is the duly appointed administratrix of the Estate of Henry Hewitt, Hampden Probate No. 158847.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1346(b).

2. Under the Swine Flu Immunization Act of 1976, 42 U.S.C. § 247b, the United States of America is the proper defendant in all actions arising under the Act.

3. Under the Swine Flu Immunization Act of 1976, the procedure of the Federal Tort Claims Act is to be followed, 42 U.S.C. § 247b(k)(2)(a); 28 U.S.C. §§ 1346(b), 2674.

4. Pursuant to the Federal Tort Claims Act, as incorporated in the Swine Flu Immunization Act of 1976, the trial court applies the substantive law of the state where the act or omission occurred, 28 U.S.C. § 1346(b). Therefore, Massachusetts law applies.

5. Under Massachusetts law, the estate of Henry Hewitt is entitled to recover for medical bills incurred as a result of GBS which Henry Hewitt contracted as a result of receiving the swine flu vaccine. His medical bills total $41,762.08.

6. The estate of Henry Hewitt is entitled to recover for the conscious pain and suffering sustained by Henry Hewitt as a result of receiving the swine flu vaccine.

After considering the nature, extent and duration of Mr. Hewitt's pain and suffering, and his age of 65 at the time, his previous heart and other medical problems, and the applicable authorities, I find that

reasonable compensation for Mr. Hewitt's pain and suffering is $150,000.00.

7. Under the Massachusetts Wrongful Death Statute, M.G.L. c. 229 § 2, recovery is permitted for the funeral and burial expenses of Henry Hewitt. These expenses total $1,400.00.

8. Under the Massachusetts Wrongful Death Statute, M.G.L. c. 229 § 2, Mary Hewitt is entitled to recover for her loss of affection, companionship and sexual enjoyment as a result of the death of Henry Hewitt. Having reviewed the testimony of Mary Hewitt and all other memoranda submitted by the parties, I find Mary Hewitt is entitled to recover $25,000.00 for her loss.

9. Henry Frederick Hewitt and Elizabeth May Miles are not entitled to recover damages. Both were adults, age 30 and 26 respectively, at the time their father was vaccinated. Since children can only recover "if they can show they are minors dependent on the parent," *Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507 at ——, 413 N.E.2d 690 (1980), neither Henry Frederick Hewitt nor Elizabeth May Miles can recover.

10. Henry Hewitt is entitled to lost and future earnings if applicable. Based on the feeling of this Court that any lost or future earnings would be negligible, no amount for lost and future earnings will be included in the damages.

11. The estate of Henry Hewitt is entitled to total damages in the amount of $193,162.08.

12. Mary Hewitt is entitled to $25,000.00 for her claim of loss of consortium.

### CONCLUSION

Having carefully reviewed all the memoranda submitted by the parties, the testimony at trial, and the applicable authorities, I conclude that the estate of Henry Hewitt is entitled to damages in the amount of $193,162.08, and Mary Hewitt is entitled to damages of $25,000.00.

An appropriate Order shall issue.