778 F.Supp. 625 (1991)
In re INFLIGHT EXPLOSION ON TRANS WORLD AIRLINES, INC. AIRCRAFT APPROACHING ATHENS, GREECE ON APRIL 2, 1986.
This Document Pertains to:
Ospina
v.
TWA 86 Civ. 8996 (JBW)
and
Youssef
v.
TWA 87 Civ. 0060 (JBW).
MDL No. 727 (JBW).
United States District Court, E.D. New York.
November 21, 1991.
*626 Nicholas Gilman, Gilman, Olson & Pangia, Washington, D.C., Fredric Lewis, New York City, for plaintiffs.
Michael J. Crofton, John N. Romans, Katten, Muchin & Zavis, New York City, for defendant.

 TABLE OF CONTENTS
I. FACTS .......................................................................... 626
II. LAW UNDER THE WARSAW CONVENTION ................................................ 627
 A. FEDERAL CAUSE OF ACTION .................................................... 628
 B. FEDERAL COMMON LAW ......................................................... 629
III. WARSAW CONVENTION RECOVERY IN HISTORICAL CONTEXT................................ 629
 A. WRONGFUL DEATH ............................................................. 629
 B. SURVIVAL ................................................................... 630
IV. EVOLUTION OF CURRENT CONSENSUS ................................................. 631
 A. STATE LAW .................................................................. 631
 B. FEDERAL STATUTORY ANALOGUES ................................................ 632
 1. FEDERAL EMPLOYERS' LIABILITY ACT ....................................... 632
 2. FEDERAL TORT CLAIMS ACT ................................................ 632
 3. LONGSHORE AND HARBOR WORKERS' COMPENSATION ACT.......................... 633
 4. JONES ACT .............................................................. 633
 5. CIVIL RIGHTS ACT ....................................................... 634
 6. DEATH ON THE HIGH SEAS ACT AND GENERAL MARITIME
 LAW .................................................................... 635
V. POLICIES SERVED BY SURVIVAL RECOVERY FOR MENTAL AND
 PHYSICAL INJURY ................................................................ 636
 A. FULL COMPENSATION .......................................................... 636
 B. HARMONIZING EASTERN AIRLINES v. FLOYD ...................................... 637
 1. FLOYD DISTINGUISHED ON THE FACTS ....................................... 638
 2. "TRIPWIRE" ARGUMENT .................................................... 639
 C. PURPOSES OF THE CONVENTION ................................................. 639
VI. CONCLUSION ..................................................................... 641

WEINSTEIN, District Judge:

I. FACTS
As TWA Flight 840 was approaching Athens airport en route from Rome on April 2, 1986, a bomb exploded under one of the seats. Four passengers were killed and others were injured. Mohsen Youssef, seated some distance from the explosion, suffered physical and psychic injury. Alberto Ospina, seated over the bomb, was blown out of the plane; his broken body was later found with serious wounds in the lower torso. Despite a large hole in the fuselage, the plane landed safely.
A young female terrorist had boarded in Cairo and placed the bomb under her seat. She was allowed aboard in flagrant violation of many basic security measures. Compounding TWA's gross errors was a failure to search the cabin properly in Rome, the first stop after Cairo. The terrorist set the bomb trigger and left the plane in Rome, proceeding to a self-contratulatory T.V. appearance in Lebanon.
To detail TWA's neglect would reveal security measures and information best left unpublished. (When the security evidence was taken the courtroom was cleared.) It is enough to say that the jury verdicts, finding TWA's delicts the equivalent of willful misconduct, were more than justified. The award to Youssef is not seriously challenged. It was fully supported by the record.
The only open issue is the propriety of $2,754,951.60 in damages awarded to Mr. Ospina's widow. TWA particularly attacks an included award of $85,000 for Mr. Ospina's pain and suffering as he was being *627 blown out of the plane and was falling to the ground.
Mr. Ospina was thirty-nine years old, a successful Colombian-American who was travelling on business when the accident occurred. He flew all over the world, training physicians and technicians to use the medical devices his company produced. He was being groomed for the position of vice-president in charge of international marketing. The amount of loss attributable to death was fully supported by the evidence.
Describing the injuries, the Athens Medical Examiner at the post-mortem examination determined that the body had been nearly severed by the blast. There were bruises and abrasions on the skin and multiple fractures of the skull, sternum, ribs, and lower extremities. First and second degree burns covered more than 20% of Mr. Ospina's body. The lower body was largely eviscerated. After noting other injuries, the examiner concluded that "the dismemberment of the body was made while alive, while the dull injuries were made postmortally."
TWA made strenuous efforts to challenge the conclusions of plaintiff's expert, the well-qualified coroner of Westchester County. The expert insisted that Mr. Ospina probably lived five to ten seconds after the blast and that he was aware of what was happening to him. TWA produced no expert on this issue. Assuming, as we must, that Mr. Ospina knew what was happening as he was plunging to his death, an award of $85,000 is not excessive. There was enough evidence to support the jury's verdict that Mr. Ospina suffered pain and extreme psychic damage after he was injured by the bomb, but before he died.
TWA claims that damages for pain and suffering are improper under the Warsaw Convention. For a variety of reasons described below, such damages are awardable under the Warsaw Convention.

II. LAW UNDER THE WARSAW CONVENTION
The Warsaw Convention was ratified by the United States Senate in 1934. It governs air carrier liability for harm to passengers on international flights. The carrier is liable for "damages sustained in the event of the death or wounding of a passenger." Article 17 of the Warsaw Convention states:
The carrier shall be liable for damage sustained in the event of the death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course of any of the operations of embarking or disembarking.
Convention for Unification of Certain Rules Relating to International Transportation by Air, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876, entered into force Oct. 29, 1934, reprinted at 49 U.S.C.App. § 1502 note (1976). The original French text reads:
Le transporteur est responsable du dommage survenu en cas de mort, de blessure, ou de toute autre lésion corporelle subie par un voyageur lorsque l'accident qui a causé le dommage s'est produit à bord de l'aéronef ou au cours de toutes opérations d'embarquement et de débarquement.
49 Stat. 3005.
The Montreal Agreement of 1966 modified the Convention for flights with connecting points in the United States, raising the limit of liability to $75,000 and eliminating due care defenses. See Agreement Relating to Liability Limitation of the Warsaw Convention and the Hague Protocol, approved by C.A.B. Order No. E-23680, reprinted at 49 U.S.C.App. § 1502 note (1976). So modified, the Warsaw Convention now subjects international carriers to strict liability for Article 17 injuries sustained on flights connected with the United States.
Under Article 25 of the Convention, the $75,000 limit is inapplicable where the damage arises from an air carrier's "wilful misconduct." That provision reads:
(1) The carrier shall not be entitled to avail himself of the provisions of this convention which exclude or limit his liability, *628 if the damage is caused by his wilful misconduct or by such default on his part as, in accordance with the law of the court to which the case is submitted, is considered to be equivalent to wilful misconduct.
49 U.S.C.App. § 1502 note (1976). Article 25 applies in this case.

A. FEDERAL CAUSE OF ACTION
For much of its history, the Warsaw Convention was interpreted as not creating an independent cause of action. Rather, courts held that the Convention simply created legal principles to determine recovery for infringements of independently created rights. Only in 1978 did the Court of Appeals for the Second Circuit rule that the Convention creates its own wrongful death cause of action founded in federal treaty law. Benjamins v. British European Airways, 572 F.2d 913, 919 (2d Cir.1978), cert. denied, 439 U.S. 1114, 99 S.Ct. 1016, 59 L.Ed.2d 72 (1979). Other circuits soon followed. See, e.g., In re Mexico City Aircrash of October 31, 1979, 708 F.2d 400, 412 (9th Cir.1983) ("[T]he Convention creates an independent cause of action for wrongful death, a cause of action founded in federal treaty law."); Boehringer Mannheim-Diagnostics, Inc. v. Pan Am. World Airways, 737 F.2d 456, 459 (5th Cir.1984) (Warsaw Convention creates controlling cause of action and preempts state law), cert. denied, 469 U.S. 1186, 105 S.Ct. 951, 83 L.Ed.2d 959 (1985).
One troubling issue for courts in circuits which recognize a cause of action under the Convention is the status of state law claims. Should plaintiffs be permitted to sue under both the Convention and state statutes? The Second Circuit recently answered in the negative, holding that a Warsaw Convention wrongful death action preempts all state law causes of action:
We therefore decline to read into the Convention any attempt to preserve a right to a state law cause of action in addition to the action provided under the Convention itself.
In re Air Disaster at Lockerbie, Scotland on December 21, 1988, 928 F.2d 1267, 1274 (2d Cir.1991). Explaining its reasoning, based largely on the need for uniformity, the court continued:
The way the other parties [to the Convention] have viewed the Convention, its emphasis on uniformity, and the need for a single, unified rule on such points as the recoverability of punitive damages lead to the belief that the Convention should be interpreted as making all actions  other than those not based on the Convention  exclusive under it.
Id.
Though resolved in the Second Circuit, the question whether the Convention preempts state law causes of action is an open question elsewhere. Chief Judge Mikva has criticized the In re Lockerbie decision, finding it "astonishing" in light of earlier precedents. See In re Korean Air Lines Disaster of September 1, 1983, 932 F.2d 1475, 1492 (D.C.Cir.1991) (Mikva, C.J., dissenting in part); see also Calderon v. Aerovias Nacionales de Colombia, Avianca, Inc., 738 F.Supp. 485, 486 (S.D.Fla.1990) ("[T]he Warsaw Convention, rather than supplying an exclusive cause of action, provides only an exclusive remedy for such actions, however founded.") (emphasis added); Morgan v. United Air Lines, 750 F.Supp. 1046, 1052 (D.Colo.1990) (state law is not preempted under the Warsaw Convention).
The Supreme Court has twice declined to decide the issue of exclusivity under the Warsaw Convention. See Eastern Airlines v. Floyd, ___ U.S. ___, 111 S.Ct. 1489, 1502, 113 L.Ed.2d 569 (1991); Air France v. Saks, 470 U.S. 392, 408, 105 S.Ct. 1338, 1346, 84 L.Ed.2d 289 (1985) (expressing no view on whether plaintiff's state negligence action could go forward if Convention's liability rules did not apply). In the Second Circuit, at least, any remedy must be predicated, not on state law, but on federal common law.
Should the Supreme Court ultimately decide that state law causes of action continue to be enforceable (contrary to the Second Circuit view), the conclusion of this memorandum would be unchanged. Were state substantive law to govern, the law of *629 New York under applicable federal and state conflict rules would apply, the parties have in effect conceded. New York substantive law allows recovery for pain and suffering prior to death.

B. FEDERAL COMMON LAW
Appellants in In re Lockerbie were appealing lower court orders which had denied punitive damages under the Warsaw Convention. One case concerned the hijacking of a Pan Am jet over Karachi, Pakistan, on September 6, 1986. The other case stemmed from the notorious bombing of Pan Am Flight 103 over Lockerbie, Scotland, on December 21, 1988.
Having decided that the Convention preempts state wrongful death causes of action, the Second Circuit next considered what law applies in suits filed under the Convention itself. Since the Warsaw Convention is a treaty, with the same stature and effect as a federal statute, the In re Lockerbie court held that federal law must be applied to construe the Convention. It wrote:
We look to the source of the right in order to determine the controlling law. The source of the right to sue under the Convention is the Convention itselfa treaty that only the federal government has the power to make....
Consequently, the source of the right is federal lawin fact, uniquely federal law. It follows then the substantive law we must apply is also federal law.
In re Lockerbie, 928 F.2d at 1278 (citations omitted; emphasis in original). The court determined that the applicable substantive law is the law of tort, not contract.
Two other courts have applied federal common law to cases brought under the Warsaw Convention. In In re Korean Air Lines Disaster of September 1, 1983, 932 F.2d 1475 (D.C.Cir.1991), the D.C. Circuit engaged in an analysis similar to that of the In re Lockerbie court, applying federal common law to determine whether plaintiffs were entitled to punitive damages in a cause of action under the Convention. See In re Korean Air Lines, 932 F.2d at 1484-90 (finding punitive damages not allowable under the Convention). Another earlier case, Harris v. Polskie Linie Lotnicze, 820 F.2d 1000, 1003-04 (9th Cir.1987), applied federal common law to ascertain the proper choice of law under the Convention.
In determining the applicable federal common law on the issue of survival recovery for pain and suffering damages, it is desirable first to examine the development of the current United States judicial and legislative consensus.

III. WARSAW CONVENTION RECOVERY IN HISTORICAL CONTEXT

A. WRONGFUL DEATH
Wrongful death actions and survival actions are designed to compensate for different kinds of loss. A wrongful death award compensates the estate or the family members for the economic loss they suffer as a result of death, whereas a survival action continues the injured person's own claim for injuries which accrued before death. The common law did not recognize either of these claims, and several principles have been offered in explanation. See generally F. Harper, F. James & O. Gray, The Law of Torts § 24.1 et seq. (2d ed. 1986).
Under the felony merger doctrine, a tort against another human being was considered less serious than a crime against the Crown. The Crown was the first to exact punishment, which usually meant that the felon was executed and his property forfeited. Id. § 24.1, at 455 n. 1. Logically, wrongful death recovery was impossible: nothing of the defendant or his property remained, even if a victim's family had been able or had wanted to pursue a private cause of action. Moreover, at common law judges had an aversion to placing a value on something so sacred as human life. See Smedley, Wrongful DeathBases of the Common Law Rules, 13 Vand. L.Rev. 605, 613 (1960).
The American colonies did not follow the common law rule. They required an assailant to pay a sum to the victim's family, concomitant with the criminal proceeding, not as a separate civil action. This departure *630 from the British practice of denying wrongful death recovery stemmed at least in part from the peculiar needs of a colonial nation, the absence of persons learned in the law, and the colonists' dim understanding of certain of the doctrines brought over from England. See generally Malone, The Genesis of Wrongful Death, 17 Stan.L.Rev. 1043, 1063 (1965).
The ascendancy of industry and the railways may explain why wrongful death actions resurfaced in mid-nineteenth-century America:
Tragedy as a result of indifference and neglect was suddenly upon us in the factory, on the city streets, and on the rails. Nor was the principal villain of the piece any longer the impecunious felon. In his place stood the prospering corporation with abundant assets to meet the needs of widows and orphans.
Malone, supra, at 1043. The notion of locomotives injuring the nineteenth-century worker raises an eerie comparison to the huge jets ferrying twentieth-century workers like Alberto Ospina around the globe.
The first British wrongful death statute was enacted in 1846. See Fatal Accidents Act (Lord Campbell's Act), 9 & 10 Vict., ch. 93 (1846). Many American states soon followed, and every state has now modified the common law rule by statute to provide for some kind of wrongful death recovery. F. Harper, F. James & O. Gray, supra, § 24.1.

B. SURVIVAL
Survival actions are distinct from wrongful death claims, and are designed to continue whatever action the decedent would have had, but for his death. A survival action ensures that a tortfeasor will not do better by killing rather than by simply injuring. Without a survival action, a defendant escapes liability for personal injury or pain and suffering at the moment the injured plaintiff dies.
Survival actions are designed to avoid another ancient common law rule: actio personalis moritur cum persona ("a personal action dies with the person"). See 2 S. Speiser, Recovery for Wrongful Death § 14.1 (2d ed. 1975 & Supp.1990); see also Livingston, Survival of Tort Actions: A Proposal for California Legislation, 37 Calif.L.Rev. 63 (1949). This rule is ancient; it was common among the English courts of the fifteenth century. Malone, supra, at 1044 n. 1 (citing 3 W. Holdsworth, A History of English Law 576 (3d ed. 1923)). At one time, commentators thought the maxim originated in Roman jurisprudence, but this assumption has since been abandoned. See Malone, supra, at 1051 (citing H. Goudy, Two Ancient Brocards, in Essays in Legal History §§ 18-22 (P. Vinogradoff ed. 1913)).
There are some explanations, though none particularly compelling, for why causes of action were thought to expire upon the death of plaintiff or defendant. As noted above, one reason is the lack of anything to award a plaintiff once the state had exacted its punishment. Moreover, when the plaintiff died, his need for vengeance and satisfaction from the defendant also seemed to expire. See W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser & Keeton on Torts § 126, at 942 (5th ed. 1984). With a conceptual shift away from punishment and toward compensation in the law, survival recovery followed. See id. In a sense, the value of the inchoate claim "earned" by the deceased during his or her lifetime could be passed on after death like other assets.
At first, only a limited group of persons could recover survival damages for injury to others. Masters recouped for losses to servants; husbands could recover for injuries to wife and child. Wives and servants, however, had no corresponding rights:
[T]he inferior hath no kind of property in the company, care or assistance of the superior, as the superior is held to have in those of the inferior; and therefore the inferior can suffer no loss or injury.
3 W. Blackstone, Commentaries *143.
By the mid-nineteenth century, legislatures began to eliminate these and other common law rules. Smedley, supra, at 619. In 1934, a British statute was enacted to provide that the right to maintain a suit did not expire with the death of the injured *631 person. See Law Reform (Miscellaneous Provisions) Act, 24 & 25 Geo. 5, ch. 41 (1934). The majority of American states now permit some kind of survival action. See 2 S. Speiser, Recovery for Wrongful Death § 14.8 (2d ed. 1975 & Supp.1990). See generally Miller, Dead People in Torts: A Second Installment, 22 Cath. U.L.Rev. 73 (1972). In those states permitting survival recovery, all courts permit damages for conscious pain and suffering in personal injury cases. F. Harper, F. James & O. Gray, supra, §§ 25.10, 25.16; see also Restatement (Second) of Torts §§ 904, 905 (1979).
This development is consistent with the current economic rationales and conceptual underpinnings of modern American tort law: first, full compensation for the persons harmed; second, deterrence against future delicts by the wrongdoer; and third, some recognition of each person's inviolate right against impairment of his or her freedom. See generally 1 A.L.I. Reporter's Study Enterprise Responsibility for Personal Injury 14-33 (1991); Tort Law and the Public Interest 18-39 (P. Schuck ed. 1991); S. Perry, The Moral Foundations of Tort Law (1991) (collecting non-economic theories of tort law); O. Holmes, The Common Law 94-102 (1881, 1943 ed.).
Courts generally rely on the economic policy underlying the first two of these principles, but the third is a powerful hidden premise influencing both courts and juries. These principles have led to the widespread acceptance of full compensation for loss as one of tort law's hallmarks. See infra Section V(A). The $75,000 Warsaw Convention limit is a statutory departure. It yields to these general principles when an air carrier causes damage through willful misconduct.

IV. EVOLUTION OF CURRENT CONSENSUS

A. STATE LAW
Survival recovery for pain and suffering is an issue on which there is a clear consensus in American state law. The overwhelming majority of states have survival statutes or provide for survival recovery under wrongful death statutes. See generally 2 S. Speiser, supra, § 14.8; Restatement (Second) of Torts §§ 925, 926 (1979).
Applying these survival statutes, scores of state law decisions uphold conscious pain and suffering awards in air crashes and other traumatic situations. See, e.g., In re Air Crash Disaster at Sioux City, Iowa on July 19, 1989, 760 F.Supp. 1283, 1287 (N.D.Ill.1991) (damages for pre-death pain and suffering recoverable under California wrongful death statute); cf. 1 N.Y. Pattern Jury Instructions 2:171 (2d ed. 1974 & Supp.1990) (Warsaw Convention); 2:280 (pain and suffering). Many courts require affirmative proof that the plaintiff was conscious and aware of the injury. See, e.g., In re Air Crash Disaster Near Chicago, Illinois on May 25, 1979, 507 F.Supp. 21, 24 & n. 1 (N.D.Ill.1980) (declining to strike or dismiss pain and suffering claims under Illinois law and permitting discovery on issue of whether victim was conscious even for a short time); Caldarera v. Eastern Airlines, 529 F.Supp. 634, 640 (W.D.La.1982) (damages improper under Louisiana law where there was no proof of decedent's conscious suffering).
The cases denying such pain and suffering awards are the exception. See, e.g., El-Meswari v. Washington Gas Light Co., 785 F.2d 483, 490-91 (4th Cir.1986) (Virginia statute does not allow pre-death pain and suffering damages where roofing materials were thrown from roof onto five-year-old child); O'Keefe v. Boeing Co., 335 F.Supp. 1104, 1115 n. 34 (S.D.N.Y.1971) (Washington state survival statute did not allow conscious pain and suffering where decedents were killed in plane crash).
The In re Lockerbie decision made clear that a cause of action under the Warsaw Convention preempts all state law wrongful death claims. But decisions rendered under state law, as well as a well-developed American consensus of providing survival actions after death, need not be cast aside. Like the federal statutes and decisions examined below, current state law decisions are instructive in fashioning a uniform modern federal common law rule for Warsaw Convention recovery.
*632 If possible, federal common law tort jurisprudence should be consistent with that developed by the states. Cf. Colorado v. ASARCO, Inc., 608 F.Supp. 1484, 1490 (D.Colo.1985) (turning first to state law in developing federal common law of contribution under section 107 of Comprehensive Environmental Response, Compensation, and Liability Act). The federal courts need not ignore the wisdom acquired in modern times. They need not reinvent an old wheel  particularly where the wheel may have been adequate only for a common-law era ox and cart. On the issues now before the court, a consensus in United States tort law is possible. Cf. In re "Agent Orange" Prod. Liability Litigation, 580 F.Supp. 690, 693-703, 706 (E.D.N.Y.1984) (national consensus law applied to determine liability and appropriateness of punitive damages).

B. FEDERAL STATUTORY ANALOGUES
Although the In re Lockerbie court directed that federal law must be applied to interpret the Warsaw Convention, it did not point courts in any particular direction to find that law. The Ninth Circuit has suggested that courts should look to federal statutory analogues, writing that
the questions of who are the persons entitled to assert th[e Warsaw Convention wrongful death] cause of action and what are their respective rights may be determined by reference to other federal statutes.... [W]e leave to future courts the task of determining the most appropriate analog.
In re Mexico City Aircrash of October 31, 1979, 708 F.2d 400, 415 (9th Cir.1983) (citation omitted).
In deciding which federal statutes to examine, the Supreme Court has offered some guidance. In Moragne v. States Marine Lines, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), the Court suggested several possible statutes that might be helpful in determining the proper beneficiaries in a general maritime (common law) wrongful death action. Although the Court declined to choose any one of the statutes in that case, it suggested as possibilities the Federal Employers' Liability Act, the Jones Act, the Outer Continental Shelf Lands Act, the Longshore and Harbor Workers' Compensation Act, and the Death on the High Seas Act. Moragne, 398 U.S. at 407-09, 90 S.Ct. at 1791-92. A number of these statutes, among others, are considered below. Under each of these statutes, survival recovery is allowed and pain and suffering damages are appropriate.

1. Federal Employers' Liability Act
The Federal Employers' Liability Act, 45 U.S.C. § 51 et seq. (1986) ["FELA"], governs liability of common carriers to their employees for injuries arising in the course of employment. One section explicitly provides for a survival action for the benefit of the employee's beneficiaries:
Any right of action given by this chapter to a person suffering injury shall survive to his or her personal representative....
Id. § 59.
Under the FELA, courts have awarded pain and suffering damages for the period of time between injury and death. In one case, the court held that the administrator of a railway switchman's estate could recover for the 3½ hours of conscious pain and suffering that he experienced before his death. Wetherbee v. Elgin, Joliet & E. Ry. Co., 191 F.2d 302, 308 (7th Cir.1951). Although the FELA applies by its terms only to federal employees, the statute is useful as an analogue since it specifically provides that a survival action includes damages for "[a]ny right of action" the deceased would have been able to maintain if he or she had survived. See 45 U.S.C. § 59 (1986) (emphasis added).

2. Federal Tort Claims Act
The Federal Tort Claims Act, 28 U.S.C. § 1346(b) (1976); 28 U.S.C. § 2671 et seq. (1965) ["FTCA"], governs tort claims against the United States government. As with the FELA, courts have awarded post-injury pain and suffering damages for claims filed under the FTCA. Although the FTCA itself has no survival provision, state statutes which permit pain and suffering *633 damages are relied upon to grant survival damages to FTCA plaintiffs.
A striking series of cases under the FTCA arose where persons suffered Guillain-Barre Syndrome after being administered the Swine Flu Vaccine. In Cardillo v. United States, 622 F.Supp. 1331 (D.Conn.1984), the court approved the pain and suffering award for the period of time beginning when the plaintiff was attached to a respirator until it was discovered disconnected ten days later. The court also found that beyond that date until plaintiff's death, she had sufficient cognition to perceive pain and thus a further award was proper. Id. at 1347; see also Hewitt v. United States, 550 F.Supp. 589, 591 (D.Mass.1982) (recovery appropriate under Massachusetts law for conscious pain and suffering of decedent administered Swine Flu Vaccine); cf. Smiel v. United States, 147 F.Supp. 835, 835-36 (N.D.N.Y.1957) (denying conscious pain and suffering damages under FTCA for three-year-old child who died within minutes of being run over by mail truck, because there was no showing of negligence; implying that recovery would have been permitted on such showing).
The FTCA has a broader sweep than the FELA, since it covers all possible plaintiffs rather than employees alone. In addition, since the claims are tort-based, the analogy to causes of action under the Warsaw Convention is bolstered. As already noted, the Second Circuit in In re Air Disaster at Lockerbie, Scotland on December 21, 1988, 928 F.2d 1267, 1279 (2d Cir.1991), determined that the federal common law claims under the Warsaw Convention sound in tort.

3. Longshore and Harbor Workers' Compensation Act
The Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. (1986) ["LHWCA"], addresses compensation for employees injured on or near navigable waters of the United States. Section 903 provides:
[C]ompensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including [adjoining structures])....
Id. § 903(a). The LHWCA excludes federal employees from coverage. Id. § 903(b).
Under the LHWCA, courts have awarded pain and suffering survival damages, even where the time period between injury and death was brief. For example, in Hinson v. SS Paros, 461 F.Supp. 219 (S.D.Tex. 1978), the court approved a $5,000 award for the "fleetest seconds" between the time a longshoreman fell overboard and then drowned. Id. at 222. Another court sustained an even higher award for the excruciating pain suffered by a sulphur company employee when molten sulphur fell on him and killed him as he was unloading a barge. Drachenberg v. Canal Barge Co., 621 F.2d 760, 762 (5th Cir.1980) (district court's award of $40,000 was appropriate; even higher award might have been proper).

4. Jones Act
Where a seaman is injured on board a vessel, the Jones Act provides a cause of action against ship owners for their negligence. The statute provides:
Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law ...; and in case of death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law....
46 U.S.C.App. § 688(a) (Supp.1991). Although the Jones Act itself has no survival provision, it affords the same remedies as the FELA. See id. ("all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply"); Cox v. Dravo Corp., 517 F.2d 620, 622 n. 2 (3d Cir.) (en banc), cert. denied, 423 U.S. 1020, 96 S.Ct. 457, 46 L.Ed.2d 392 (1975) ("[T]he judicial principles developed under the FELA are also applicable to the Jones Act.").
*634 A number of cases decided under the Jones Act have awarded pain and suffering damages for the interval between injury and death, even where the time period was short. For example, the Ninth Circuit in Cook v. Ross Island Sand & Gravel Co., 626 F.2d 746, 752 (9th Cir.1980), approved the damage award of $35,000 for a deckhand's 2½ minutes of conscious pain and suffering before he drowned after falling off a tugboat into the Columbia River. As in the case before the court today, the pathologist estimated the period of consciousness based on an autopsy. See id. at 748. The Ninth Circuit declined to adopt a "stop watch approach" to determine whether the decedent had been conscious for a legally cognizable interval of time; rather, the court held that the inquiry should depend on the circumstances of each case. Id. at 751.
Similarly, the court in In re Marina Mercante Nicaraguense, S.A., 248 F.Supp. 15, 28 (S.D.N.Y.1965) (Weinfeld, J.), modified, 364 F.2d 118 (2d Cir.1966), cert. denied, 385 U.S. 1005, 87 S.Ct. 710, 17 L.Ed.2d 544 (1967), let stand a damage award of $1,500 for the decedents' two to three minutes of conscious pain and suffering when their tugboat went down. The court wrote that "while their suffering was short-lived, it was intensive, excruciating and agonizing." Id. As one court wrote, "[t]he fact that death came in a matter of minutes, or even less, does not necessarily preclude an award for conscious pain and suffering." Noel v. Linea Aeropostal Venezolana, 260 F.Supp. 1002, 1006 (S.D.N.Y.1966) (plane en route to Venezuela exploded and crashed off the New Jersey coast).

5. Civil Rights Act
The Civil Rights Act, 42 U.S.C. § 1983 (1981), provides a cause of action where civil rights are violated by those who act under color of state authority. Courts have awarded conscious pain and suffering survival damages under this statute. For example, in Berry v. City of Muskogee, 900 F.2d 1489 (10th Cir.1990), the Tenth Circuit held that the wife of an inmate who was killed by other inmates could recover for pre-death pain and suffering in her civil rights action. The court found that the damages recoverable under the Oklahoma survival statute were too restrictive, and thus a federal survival remedy was appropriate to vindicate the purpose of section 1983. Id. at 1506-07.
In another case, a mother was permitted to recover for the pain and suffering of her minor son who was killed by police officers. Guyton v. Phillips, 532 F.Supp. 1154, 1166 (N.D.Cal.1981) ("To deny recovery for pain and suffering would strike at the very heart of a § 1983 action."); see also Sharpe v. City of Lewisburg, 677 F.Supp. 1362, 1365 (M.D.Tenn.1988) ($25,000 allowed for pain and suffering of man who lived no more than a few minutes after being shot by police officers). The district court in Guyton held that conflicting provisions of the California wrongful death statutes were preempted, just as In re Lockerbie determined that state statutes are preempted by the Warsaw Convention wrongful death action. See 532 F.Supp. at 1166; see also McFadden v. Sanchez, 710 F.2d 907, 911 (2d Cir.1983) (application of state survival statute not allowed if it would bar or limit section 1983 remedies in a death action).
In addition to a section 1983 action, another section of the Civil Rights Act explicitly provides for a survival action. The widow or next of kin of one who dies from a conspiracy has a cause of action against anyone who had both knowledge of the prohibited conspiracy and power to prevent the harm. See 42 U.S.C. § 1986 (1981).
Finally, there is a separate federal constitutional civil rights action that would support both a death and a survival action. See Bivens v. Six Unknown Named Agents, 403 U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971) (petitioner had cause of action for damages for any injuries suffered as a result of fourth amendment violation); id. at 396, 91 S.Ct. at 2004 ("`it is ... well-settled that where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the *635 wrong done'") (citing Bell v. Hood, 327 U.S. 678, 684, 66 S.Ct. 773, 777, 90 L.Ed. 939 (1946)).
The Supreme Court has held that survival recovery is allowable in a Bivens action, and the survival claim is governed by federal common law. See Carlson v. Green, 446 U.S. 14, 24-25, 100 S.Ct. 1468, 1474-75, 64 L.Ed.2d 15 (1980). The Court nonetheless declined to decide the content of the applicable federal common law. See id.; see also Weeks v. Benton, 649 F.Supp. 1297, 1309 (S.D.Ala.1986) (applying Carlson by analogy to hold that Alabama wrongful death statute may only be applied to the extent that it permits survival of section 1983 action).

6. Death on the High Seas Act and General Maritime Law
Defendant TWA urges that the Death on the High Seas Act, 46 U.S.C. § 761 et seq. (1975) ["DOHSA"] provides the most apt analogy under the Warsaw Convention. The DOHSA governs liability for any tortiously caused death occurring more than one marine league from shore. In Moragne v. States Marine Lines, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), the Supreme Court noted that among the possibly analogous federal statutes, the Death on the High Seas Act is more general, applying
not just to a class of workers but to any "person," ... bas[ing] liability on conduct violative of general maritime law....
Id. at 408, 90 S.Ct. at 1791-92.
By its own terms, the DOHSA does not provide for survival recovery. See id. § 761 ("the personal representative of the decedent may maintain a suit for damages ... for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative"); Miles v. Apex Marine Corp., ___ U.S. ___, 111 S.Ct. 317, 327, 112 L.Ed.2d 275 (1990) ("At the federal level, DOHSA contains no survival provision."). Nonetheless, courts applying the statute have used both state survival statutes and general maritime law to permit survival recovery.
In some DOHSA cases, plaintiffs are permitted to recover for the period of conscious pain and suffering between injury and death through state survival statutes. See, e.g., Snyder v. Whittaker, 839 F.2d 1085, 1092 (5th Cir.1988) (plaintiff whose husband drowned could recover pain and suffering damages under Texas survival statute in action under DOHSA); Canillas v. Joseph H. Carter, Inc., 280 F.Supp. 48, 51 (S.D.N.Y.1968) ("The silence of the Death on the High Seas Act on this subject does not cut off a claim for ante mortem pain and suffering."). The Supreme Court has declined to approve or disapprove the practice of supplementing the DOHSA in this way. Offshore Logistics, Inc. v. Tallentire, 477 U.S. 207, 215 n. 1, 106 S.Ct. 2485, 2490 n. 1, 91 L.Ed.2d 174 (1986) (declining to address whether DOHSA may be "supplemented" by pain and suffering recovery under some applicable state statute).
After the In re Lockerbie decision, the courts of this circuit may not be able to use state survival statutes to supplement a Warsaw Convention cause of action in the way the courts have done under the DOHSA. Other courts, however, have supplemented the DOHSA with a survival right based on general maritime law. See, e.g., Favaloro v. S/S Golden Gate, 687 F.Supp. 475, 480 (N.D.Cal.1987) (although DOHSA preempts wrongful death actions under state and general maritime law, it does not preempt general maritime survival action for pain and suffering). A common law survival right is engrafted onto the DOHSA in the same way that it would become part of the federal common law under the Warsaw Convention.
Under the general maritime right of survival, a pre-death conscious pain and suffering award is appropriate. See, e.g., Law v. Sea Drilling Corp., 510 F.2d 242, 249-50 (5th Cir.1975) (general maritime law permits recovery for conscious pain and suffering of employee killed when ramp on an oil rig collapsed in the Gulf of Mexico); Greene v. Vantage Steamship Corp., 466 F.2d 159, 166 & n. 9 (4th Cir.1972) (pain and suffering appropriate in wrongful death action *636 under general maritime law, since "[c]learly, there is no federal policy against [it]").
The Supreme Court recently declined to decide whether there is a general maritime right of survival. Miles v. Apex Marine Corp., ___ U.S. ___, 111 S.Ct. 317, 327, 112 L.Ed.2d 275 (1990). The Court wrote:
Miles argues that we should follow the Courts of Appeals and recognize a general maritime survival right. Apex urges us to reaffirm the traditional maritime rule and overrule these decisions. We decline to address the issue, because its resolution is unnecessary to our decision on the narrow question presented....
Even if the Supreme Court found that there is no maritime survival right, such a ruling would not necessarily bar survival rights under the Warsaw Convention because, as already noted, the general tort consensus in non-admiralty cases is to recognize a survival cause of action.
Executive Jet Aviation v. City of Cleveland, 409 U.S. 249, 264-65, 93 S.Ct. 493, 502-03, 34 L.Ed.2d 454 (1972), cited by the parties, is inapposite. In Executive Jet, the Supreme Court examined the tests for admiralty tort jurisdiction, holding that an aviation tort must bear a significant relationship to traditional maritime activity and not simply occur over navigable waters. Id. at 269, 93 S.Ct. at 505. An aircraft had hit a flock of sea gulls shortly after takeoff from Cleveland en route to Maine and New York and then crashed into Lake Erie. Since the intended course was almost entirely over land and there was no significant relationship to traditional maritime activity, there could be no admiralty jurisdiction in the absence of an applicable federal statute. See id. at 273-75, 93 S.Ct. at 506-08. Executive Jet is a decision delineating jurisdictional, not substantive, law. Federal jurisdiction in the instant case is based on the Warsaw Convention and not on the DOHSA or on admiralty jurisdiction, and thus Executive Jet is irrelevant to the issue of whether a cause of action for pain and suffering survives death.
It is important to note that the process of fashioning federal common law under the Warsaw Convention does not actually involve applying the DOHSA. Thus, the DOHSA cannot be used to inhibit federal courts from recognizing a survival action under federal Warsaw Convention treaty common law or general maritime law. Some kind of recovery for conscious pain and suffering is permissible under each of the federal statutes examined which provides for wrongful death claims, and in the majority of states. Given this overwhelming evidence, it is unnecessary to choose from among the federal statutes for one analogue. Properly construed, all lead to allowance for pain and suffering after injury but before death.

V. POLICIES SERVED BY SURVIVAL RECOVERY FOR MENTAL AND PHYSICAL INJURY

A. FULL COMPENSATION
There is a rich history in American law of compensating those injured for the full harm suffered, whether physical injury alone or in combination with mental anguish. See Restatement (Second) of Torts § 901(a) (1979). The court in In re Lockerbie addressed the question of whether punitive damages were sufficiently compensatory in nature to be proper under the Warsaw Convention. After analyzing the history and purpose of the Convention, the Second Circuit concluded that any damages awarded under the Convention must be compensatory rather than punitive, and thus punitive damages are not allowed.
Permitting Mr. Ospina's damage award for conscious pain and suffering is consistent with the holding of In re Lockerbie. Pain and suffering damages are not punitive but compensatory. See Restatement (Second) of Torts § 912 comment b (1979). That is, the plaintiff who receives damages for pain and suffering gains redress for the actual harm caused. Mr. Ospina's damage award is proper under Second Circuit precedent. As the In re Lockerbie court wrote:
[W]e agree that the way in which the Convention uses the term [dommage survenu] indicates that Article 17 refers to *637 actual harm caused by an accident rather than generalized legal damages....
The context within which the Convention was written adds further support to the conclusion that the damages contemplated by Article 17 are purely compensatory.
In re Lockerbie, 928 F.2d at 1281.
Other courts have also concluded that "dommage survenu" refers to actual harm, which includes pain and suffering. See In re Korean Air Lines Disaster of September 1, 1983, 932 F.2d 1475, 1485 (D.C.Cir. 1991) ("[t]he words `damage sustained' do not refer to legal damages; they refer to actual harm experienced"); Floyd v. Eastern Airlines, 872 F.2d 1462, 1487 n. 42 (11th Cir.1989) ("While mental injuries ... are intangible in nature, allowing recovery for them is intended to be compensatory, and is in no way meant to penalize the wrongdoer.") (citation omitted), rev'd on other grounds, ___ U.S. ___, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991); In re Air Crash Disaster at Gander, Newfoundland, on December 12, 1985, 684 F.Supp. 927, 931 (W.D.Ky.1987) ("Punitive damages are not `damages sustained' by a particular plaintiff.").

B. HARMONIZING EASTERN AIRLINES v. FLOYD

Although "dommage survenu" encompasses many forms of harm, it cannot include purely mental injury unconnected to physical harm, following the Supreme Court's decision in Eastern Airlines v. Floyd, ___ U.S. ___, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991). Plaintiffs in Floyd were passengers on a plane which lost power in three engines and began a rapid descent toward the Atlantic Ocean. After futile attempts to restart the engines, the crew notified the passengers that the plane would be ditched. Moments later, the crew restored power and the plane landed at Miami International Airport without further incident. Plaintiffs sued the airline for the extreme mental anguish they suffered in their brush with disaster.
After surveying the legal meaning of the phrase "dommage survenu" in Article 17, the structure and purposes of the Convention, the negotiating history surrounding its adoption, and the post-signing conduct of the signatories, the Court concluded that psychic injury alone will not sustain a damage award:
[A]n air carrier cannot be held liable under Article 17 when an accident has not caused a passenger to suffer death, physical injury, or physical manifestation of the injury.
Eastern Airlines v. Floyd, 111 S.Ct. at 1502.
Since the plaintiffs in Eastern Airlines v. Floyd had not suffered or alleged any physical injury, the Court declined to decide whether "dommage survenu" covers psychic injury in combination with physical damage. The Court wrote:
[W]e express no view as to whether passengers can recover for mental injuries that are accompanied by physical injuries.
Id. Nevertheless, the implication of Floyd is that psychic damage accompanying physical injury is recoverable.
The Supreme Court's opinion in Floyd contrasted purely mental injury with mental injury that is accompanied by physical harm. For example, in the section examining French case law, the Court wrote:
[W]e have been directed to no French case prior to 1929 that allowed recovery ... for the type of mental injury claimed here  injury caused by fright or shock  absent an incident in which someone sustained physical injury.
Eastern Airlines v. Floyd, ___ U.S. ___, 111 S.Ct. 1489, 1496, 113 L.Ed.2d 569 (1991) (emphasis in original). All the evidence suggested, the Supreme Court concluded, that the French legal meaning of the phrase "dommage survenu" could not apply to mental injury alone, but that it would apply to mental injury connected with physical harm. Both the documents the Court examined  which need not be reconsidered here  and the rhetorical force of the opinion, as well as the plain language of the treaty, point to recovery for those who suffer both physical and mental injury in combination. See generally Halberstam, *638 The Use of Legislative History in Treaty Interpretation: The Dual Treaty Approach, 12 Cardozo L.Rev. 1645 (1991).
American cases prior to 1929  the year of the Warsaw Convention  allowed psychic damage and pain and suffering when it was accompanied by physical trauma. See, e.g., St. Louis, Iron Mountain & S. Ry. Co. v. Craft, 237 U.S. 648, 654, 35 S.Ct. 704, 704, 59 L.Ed. 1160 (1915) (appropriate for jury to award conscious pain and suffering damages where the decedent was "`groaning every once in a while'" during the half-hour he was pinned under a rail car before he died); Luckenbach S.S. Co. v. Campbell, 8 F.2d 223, 224 (9th Cir.1925) (where a seaman on his way to clean the decks fell through a hatch and later died, $5,000 award was not too high for survival damages including conscious pain and suffering). But see Chicago, Milwaukee, & St. Paul Ry. Co. v. Clement, 226 F. 426, 426 (9th Cir.1915) (where horse-drawn milk wagon full of coke and coal was hit by train at crossing and plaintiff driver's mangled body was later found under the train, there was insufficient evidence to award pain and suffering since death was probably instantaneous).

1. Floyd Distinguished on the Facts
The factual setting in Eastern Airlines v. Floyd differs markedly from the case before the court today. That dissimilarity also supports affirming the jury award of damages to Mr. Ospina to compensate for conscious pain and suffering after wounding but before death. The experience of the Floyd plaintiffs, while no doubt excruciating, is of a different order from that experienced by the plaintiff here. The passengers on the Eastern Airlines flight were justifiably terrified as the plane lost altitude over the Atlantic, but no one was physically harmed or lost his life. The passengers' mental suffering is different from the agony Mr. Ospina suffered while in pain from his wounds, falling to certain death after the bomb tore through his body and he was ejected from the aircraft.
Even if one of the plaintiffs in Eastern Airlines v. Floyd had suffered a heart attack from the sudden loss of altitude, the facts would not have supported recovery as forcefully as they do for Ospina. For the hypothetical Floyd plaintiff, the airline's willful misconduct would have caused first, mental anguish and then, physical harm: the "damage sustained" was fright, with a physical injury occurring thereafter partly as a result of the fright.
For Mr. Ospina, however, TWA's willful misconduct led first to his physical injury, which itself caused the pain and suffering, and then he died. The pain and suffering was a direct result of the physical injury. The injury, pain and suffering, and death of Ospina were "damage sustained" under the treaty. Such a sensible interpretation of the language of Article 17 is not contrary to any ruling case law.
Plain meaning suggests that this must be "damage sustained in the event of the death or wounding of a passenger" under Article 17. Accord Burnett v. Trans World Airlines, 368 F.Supp. 1152, 1158 (D.N.M.1973) (plaintiffs injured when their TWA jet was hijacked to Amman, Jordan could recover for "any ... emotional anxiety that they can demonstrate resulted from a bodily injury suffered as a consequence of the hijacking"); see also Halberstam, The Use of Legislative History in Treaty Interpretation: The Dual Treaty Approach, 12 Cardozo L.Rev. 1645 (1991).
The Court's decision in Floyd is consistent with American tort law, since courts resist awarding damages for purely psychic injuries. See Restatement (Second) of Torts § 436A; J. Stein, Damages and Recovery § 8, at 11 (1972 & Supp.1990). Courts have been reluctant to award damages for purely psychic injury for a variety of reasons. To begin with, compensating a plaintiff for mental injury in effect requires recognizing a right to emotional tranquility, which is as yet an ill-defined notion. In addition, many courts deny liability because psychic injuries are not considered real or substantial, or because of difficulties of proof. Proximate cause is a difficult aspect of proof where there is only psychic harm. See F. Harper, F. James & *639 O. Gray, supra, § 18.4. Finally, with the prospect of awards for psychic injury alone, courts fear a flood of false claims.
There is in effect a three-level hierarchy for cases raising the issue of psychic harm. At the bottom, most troubling to courts, is purely psychic harm. In the middle, recognized by only some statutes and courts, is mental anguish which immediately precedes physical injury or death. See generally Smith, Relation of Emotions to Injury and Disease: Legal Liability for Psychic Stimuli, 30 Va.L.Rev. 193, 207 (1944). Finally, most provable and almost uniformly compensated, is psychic harm which directly results from or occurs with physical injury. See F. Harper, F. James & O. Gray, supra, § 18.4 (law freely allows recovery for psychic injuries resulting from physical harm, denominated "parasitic" psychic injury). Since Mr. Ospina suffered physical injury which then caused him psychic harm, the award of damages to compensate for that harm is appropriate.

2. "Tripwire" Argument
An objection to permitting recovery for pain and suffering subsequent to physical injury is that it would provide a dangerous precedent. It is urged that any physical injury, however slight, would then act as a "tripwire" to permit recovery for plaintiffs with predominantly mental injuries. A slight scratch or bruise on one plaintiff would mean a bonanza for him or her, whereas a plaintiff with identical mental trauma but no physical damages would not be compensated. Whether or not a de minimis rule should be devised, it cannot apply here. Mr. Ospina was almost blown in two by the bomb blast. The evidence is uncontested that he suffered excruciating physical and mental agony before dying.
Equally distinguishable are those cases where the passenger is first terrorized as the plane plunges towards the ground and then suffers physical injury or death. Cf. Shu-Tao Lin v. McDonnell Douglas Corp., 742 F.2d 45, 53 (2d Cir.1984) (seeing no "intrinsic or logical barrier" to lower court's award of damages for pre-impact psychic injury under New York law); Haley v. Pan Am. World Airways, 746 F.2d 311, 317-18 (5th Cir.1984) (where plaintiff "apprehended his death at least from the time the plane's wing hit the tree," award of damages of $15,000 for four to six seconds of fear appropriate under Louisiana law). An argument might possibly be fashioned to exclude such prior psychic damages, but it would have no bearing where, as here, the wounding occurred first and was then followed by pain and terror.
Nor need it now be determined what the effect would be of a death simultaneous with wounding due to a crash or explosion. Cf. Moorhead v. Mitsubishi Aircraft Int'l, 828 F.2d 278, 288 n. 43 (5th Cir.1987) (denial of damages for pre-crash pain and suffering proper where pilot and passengers killed instantly and pre-crash suffering not proved); Galloway v. Korzekwa, 346 F.Supp. 1086, 1093-94 (N.D.Miss.1972) (no damages under Mississippi law where death in automobile accident was instantaneous). But see United States v. Furumizo, 381 F.2d 965, 970 (9th Cir.1967) (trial court's $15,000 pain and suffering award was not excessive even where death in small plane crash was almost instantaneous; question was one for trial judge).
The expert witness testified that Mr. Ospina was definitely alive and suffering after the explosion. The expert found that Mr. Ospina "would have experienced some type of conscious suffering in a period of a range of five to ten seconds and then death would have ensued." The jury awarded damages for the approximate time of consciousness.

C. PURPOSES OF THE CONVENTION
This case represents the beginning of the development of federal common law pursuant to In re Lockerbie. In that development, it is desirableto the extent that policy and treaty language permitto conform the federal common law to modern state common law. Consistency between federal and state common law is highly desirable. The two can develop side by side as changing conditions require.
*640 As we have seen, survival damages are commonly awarded under a variety of federal statutes and under state law. If courts were not permitted to award pain and suffering survival damages under the Warsaw Convention, the Convention would be the exception to the American rule. The Second Circuit has indicated that uniformity is one of the purposes of the Warsaw Convention itself. The court in In re Lockerbie stressed that state law causes of action must be preempted in order to avoid inconsistent outcomes. See In re Air Disaster at Lockerbie, Scotland on December 21, 1988, 928 F.2d 1267, 1274 (2d Cir.1991). Uniformity within and among the states and federal government is desirable and is consistent with the national uniformity required by In re Lockerbie. Here, there is no inconsistency.
Uniformity among the nations signatory to the treaty has not been shown to be necessary or even possible. In fact, the reference in Article 25 of the Warsaw Convention to the "law of the court to which the case is submitted" suggests that national differences are expected. In any event, there would be approximate uniformity at least among common law nations, where the result in the instant case would be the expected norm. See, e.g., F. Harper, F. James & O. Gray, supra, § 24.2; Restatement (Second) of Torts § 925 comment k (1979). The result in this case is also apparently not inconsistent with civil law. See generally Martindale-Hubbell Law Digest, Canadian & International Law Digest passim (1991); B. Markesinis, A Comparative Introduction to the German Law of Torts 682, 685 (2d ed. 1990).
Cie Air France v. Teichner, 39 Revue Française de Droit Aérien 232, 23 Eur.Tr.L. 87 (Israel 1984) (English translation on file in docket of instant case), strongly suggests that other common law nations would support recovery for psychic damages following severe physical injuries. In that case an Air France flight en route from Ben-Gurion Airport in Israel to Paris, France was hijacked with its passengers and taken to Entebbe Airport in Uganda. Before their rescue by the Israeli Air Force, the passengers were threatened and subjected to great stress but were physically unharmed. The passengers sued Air France.
The Israeli Supreme Court construed "dommage survenu" (damage sustained) and "lésion corporelle" (bodily injury) to include psychic damage and mental stress unaccompanied by physical harm, in the circumstances of the hijacking and subsequent events in Uganda. The Israeli high court relied upon French general tort law principles that all the elements of damage require full compensation. It also pointed out that while English and American courts were loath to allow damages for psychological prejudice at the time of enactment of the Warsaw Convention, there had been considerable softening of that view subsequent to adoption of the treaty. The court concluded that under Israeli as well as general civil and common law analyses, purely psychic injuries warranted compensation under the Warsaw Convention. For purposes of tort law, Israel may be considered a common law country since its law is still largely influenced by that of Great Britain.
Subsequently, in Eastern Airlines v. Floyd, ___ U.S. ___, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991), the United States Supreme Court rejected the Israeli view for this country and denied damages for purely psychic injuries. It reviewed but did not adopt Teichner. See Floyd, 111 S.Ct. at 1498, 1501. The discussion in Teichner is, however, still relevant to the issue now before this court  psychic damages associated with severe physical injury. Teichner strongly suggests that the rule adopted in the instant case would a fortiori be the one embraced by both common law and civil courts. Thus, uniformity among the nations bound by the Warsaw Convention would be enhanced were the United States federal common law to incorporate the rule that psychic damage associated with physical injury is compensable under the Warsaw Convention.
Uniformity is only one of the purposes of the Warsaw Convention. In addition, the treaty was intended to "limit[] the liability of air carriers in order to foster the growth of the fledgling commercial aviation industry." *641 Eastern Airlines v. Floyd, ___ U.S. ___, 111 S.Ct. 1489, 1499, 113 L.Ed.2d 569 (1991) (citations omitted). At first glance, today's decision may seem inconsistent with that goal. The airline industry is not still "fledgling," however, as it was in the 1920s and 1930s when the Warsaw Convention was negotiated and signed. Air travel is a strong mass industry like so many others in the late twentieth century, no weaker than the bus, truck, or maritime industries which are all subject to survival actions.
Allowing survival recovery does not expand liability for international air disasters: it simply clarifies the character of damages that are already recoverable under the Convention. Thus survival recovery is not inconsistent with the purposes of the Convention. If there is any risk of slightly enhanced liability, it is overborne by the changing nature and circumstances of modern international air travel. See In re Aircrash in Bali, Indonesia on April 22, 1974, 684 F.2d 1301, 1310 (9th Cir.1982) (acknowledging plaintiffs' arguments that the airline industry is no longer in its infancy and thus policies must shift). But see id. at 1309 (court interpreting a treaty like the Warsaw Convention must "studiously avoid imposing its own view of foreign policy objectives and must accept [those] of the executive and legislative branches").
Finally, since Article 25 of the Warsaw Convention applies and the liability cap is lifted, plaintiff or a representative may recover for all the damages suffered. "[T]he Convention deliberately allows common law countries to subject air carriers to unlimited liability in cases of willful misconduct." In re Lockerbie, 928 F.2d at 1271 (citing G. Miller, Liability in International Air Transport 80 (1977)). That liability should properly include compensation for the pain and suffering a plaintiff actually experiences.
Allowing survival damages for pain and suffering comports with the main policy goals of general tort law  full deterrence and compensation  without interfering with the goals of the Warsaw Convention itself. These goals are compatible  in fact, almost identical. Both are designed to provide full compensation for harm suffered and deterrence when the statutory limit of $75,000 does not apply.
The moral component of tort law is also vindicated by allowing full survival recovery. The jury award represents the sublimation of our own horror and our substitution, through imagination, for Mr. Ospina in his final moments. It is as if we ourselves are falling to our deaths. This constitutes our recognition of the importance of human life and dignity up to the moment of death. The compensation owed the dying Mr. Ospina is one of his assets, which may be collected by his widow for his estate.

VI. CONCLUSION
The jury's award of damages for conscious pain and suffering damages for the period between Mr. Ospina's physical wounding and death is appropriate under the Warsaw Convention. The language of the Convention, federal common law as embodied in federal statutes, and state decisional and statutory authority support such awards. Conscious pain and suffering damages are neither speculative nor punitive, but rather compensate the survivor for the actual harm the decedent experienced.
All other awards and findings of the jury are fully supported by the evidence. The jury's verdict is confirmed. Defendant's motion to set aside or reduce the verdicts or for a new trial is denied.
This judgment closes the last chapter in MDL 727. All the cases arising from the Cairo-Rome-Athens terrorist attack on the TWA airliner have now been tried or settled. The clerk will notify the Judicial Panel on Multidistrict Litigation.
So ordered.